## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MISC. NO.:

SECURITIES AND EXCHANGE COMMISSION,

      **Applicant,**

v.

EMPIREX CAPITAL LLC,
AKC MANAGEMENT LLC,
RAFAEL ALBERTO VARGAS
GONZALEZ, a/k/a RAFAEL VARGAS,
and
PAOLA A. VARGAS,

      **Respondents.**

_____/

### SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS AND INCORPORATED MEMORANDUM OF LAW

Applicant Securities and Exchange Commission (the "Commission") applies for an order to show cause and for an order compelling Respondents Empirex Capital LLC ("**Empirex**"), Empirex's Manager Rafael Alberto Vargas Gonzalez, a/k/a Rafael Vargas ("**R. Vargas**"), AKC Management LLC ("**AKC**"), and AKC's Manager, Paola A. Vargas ("**P. Vargas**"), (collectively "**Respondents**") to comply with:

    (1) the Commission's second subpoenas issued to Empirex and R. Vargas requiring production of documents (the "**Second Subpoenas**");

    (2) the Commission's subpoena to AKC requiring production of documents ("**AKC Subpoena**"); and

    (3) the Commission's subpoena requiring P. Vargas appear remotely, via Web-Ex, for sworn testimony ("**P. Vargas Subpoena**").

      In support of this application, the Commission states as follows:

## I.  <u>BACKGROUND</u>

The Commission has been investigating a potential fraudulent offering scheme by Empirex, a Florida based limited liability company, and its sole owner and manager R. Vargas. Issues central to the potential violations include whether Empirex and R. Vargas have engaged in a fraudulent securities offering, whether any potential securities laws violations are ongoing, and the use and dissipation of investor funds.

Evidence gathered in the investigation reveals that Empirex may have raised as much as $55 million from investors in an unregistered securities offering, touting potential investment returns of up to 18% per month. [Declaration of Commission Attorney Shelly-Ann A. Springer-Charles, dated August 29, 2022, (**"Exh. 1"**), ¶ 6; Declaration of Commission Accountant Crystal Ivory, dated August 29, 2022, ("**Exh. 2"**), ¶ 5].  Empirex and R. Vargas produced documents in response to the Commission's first subpoenas issued to them in April 2021 (**"First Subpoenas"**). However, given the inadequate production in response to the First Subpoenas, as further highlighted by additional information the Commission staff uncovered since the issuance of the First Subpoenas, the Commission issued the Second Subpoenas to Empirex and R. Vargas in June 2022, making essentially the same informational requests supplemented by the newly discovered information.  However, in response to the Second Subpoenas, Empirex and R. Vargas failed to produce any additional documents beyond seven pages of independent contractor agreements and a print out of information concerning Empirex from a website called "SEC.report." which explicitly disclaims any affiliation with the SEC or the Electronic Data Gathering, Analysis, and Retrieval System, a/k/a EDGAR.

Additionally, evidence gathered in the investigation reveals that AKC, a limited liability company managed by R. Vargas' sister, P. Vargas, has wired over $7.5 million from various AKC

bank accounts to Empirex and Vargas, collectively.[1]  [Exh. 1, ¶ 20; Exh. 2, ¶ 5]. Given this information, it is apparent that AKC and P. Vargas must have documents and testimony that are critical to the Commission's investigation.  Yet, in response to lawfully issued administrative subpoenas, AKC and P. Vargas have refused to produce any documents or appear for testimony, raising meritless objections and, in a surprisingly unsubstantiated position, stated that the "SEC must seek an enforcement action in a United States District Court." [Exh. 1, ¶ 35].

For the reasons set forth below, the Commission requests that this Court enter an Order to Show Cause, compelling Empirex, R. Vargas, AKC, and P. Vargas to appear before the Court and show cause why the Commission's subpoenas should not be enforced.

## II.  STATEMENT OF FACTS

### A.  The Commission's Authority and Reason for Investigation

1.      The Commission has issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of Empirex Capital LLC (FL-04274). [*Id.*, ¶ 2].

2.      Under the Formal Order, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation.  [*Id.*, ¶ 3].[2]

3.      The Formal Order directs the Commission's staff to conduct a private investigation to determine whether Empirex its officers, directors, employees, partners, subsidiaries, affiliates,

---

[1] Several months after receiving the Commission's subpoena for documents, AKC was administratively dissolved as of June 30, 2022.  [Exh. 1, ¶ 36].  On July 13, 2022, Ms. Springer-Charles sent AKC and P. Vargas' counsel a letter advising P. Vargas and AKC should preserve all documents and records. [*Id.*].

or other persons or entities, have engaged in the enumerated potential violations of the securities registration and antifraud provisions of the federal securities laws, specifically, violations of Section 5(a), 5(c), and 17(a) of the Securities Act of 1933 (**"Securities Act"**) and Section 10(b) of the Securities Exchange Act of 1934 (**"Exchange Act"**) and Rule 10b-5 thereunder.  [*Id.*, ¶ 5].

4.      Empirex, a Florida limited liability company based in Coral Gables, Florida, appears to be a private fund that originally purported to invest in traditional markets, cryptocurrency markets, and mixed markets. [*Id.,* ¶ 6].  More recently, the focus has been on cryptocurrency markets.  [*Id.*]. Empirex is solely owned and managed by R. Vargas.  [*Id.*].  The investigation has revealed that Empirex has made numerous public statements through social media and LinkedIn, and on YouTube and its publicly available website about its investment plans, and has claimed to provide returns to investors of up to 8% monthly [*Id.*].  Further, investor agreements with Empirex obtained by the Commission refer to returns of up to 18% monthly. [*Id.*].  This is a sampling of Empirex's website:



[Ex. 1, ¶ 6 (*sic*)].

5.      In a 2020 filing with the Commission indicating that Empirex was relying on an exemption to registration (available only for accredited investors), Empirex further represented that it had raised at least $5 million from investors. [*Id.,* ¶ 7].

6.      As part of the investigation, the Commission subpoenaed documents from U.S. banks relating to accounts maintained by Empirex and R. Vargas. [*Id.*, ¶ 9].  The investigation has revealed that approximately 75 wire or other transfers were sent from U.S. bank accounts maintained by AKC, totaling over $7.5 million, to Empirex and R. Vargas, collectively. [*Id.*, ¶ 20; Exh. 2, ¶ 5].  P. Vargas is R. Vargas' sister and is manager of AKC. [Ex. 1, ¶ 21].  The total amount of deposits received from AKC represent approximately 13% of the total inflows into the Empirex and R. Vargas accounts, collectively. [Exh. 2, ¶ 5].

B.      **The Commission's Subpoenas and Respondents' Failure to Comply**

i. ***The Subpoenas to Empirex and R. Vargas***

7.      As part of the investigation pursuant to the Formal Order, on April 20, 2021, the Commission issued the First Subpoenas for the production of documents to Empirex and R. Vargas. [Exh. 1, ¶ 8].  Although Empirex and R. Vargas did produce documents responsive to the First Subpoenas, based on information we have learned through this investigation, including documents we subpoenaed from, among others, U.S. banks where Empirex maintained bank accounts, we believe that Empirex and R. Vargas' production pursuant to the First Subpoenas were incomplete.  [*Id.,* ¶9].  For example, in response to the First Subpoenas, Empirex produced records for one of its bank accounts and R. Vargas also produced records for one his bank accounts.  [Exh. 1, ¶9; Exh. 2, ¶ 4].  However, through investigation, we have identified 24 additional bank accounts for Empirex and R. Vargas, collectively. [*Id.*].   Further, an analysis of the records of all the

Empirex and R. Vargas bank accounts shows that from April 2018 through May 2022 there were at least $55 million in deposits into the Empirex and R. Vargas accounts, collectively. [*Id.*].

8.      R. Vargas appeared for testimony via the WebEx video platform pursuant to a Commission subpoena on March 11, 2022, and invoked his Fifth Amendment privilege against self-incrimination to substantive questions about the number of investors Empirex had from inception to the present, the total funds Empirex raised from investors from inception to the present, and the use of Empirex investor funds. [Exh. 1, ¶ 10].

9.      As a result of the staff's concern that Empirex and R. Vargas had not made a full production, and our desire to obtain more current information, Commission staff issued the Second Subpoenas to Empirex and R. Vargas. [*Id.,* ¶ 11]. The Second Subpoenas were served on Empirex's and R. Vargas's counsel (same counsel) who agreed to accept service of the Second Subpoenas. [*Id.*].

10.     The Second Subpoenas originally required Empirex and R. Vargas produce documents on June 30, 2022. [*Id.* ¶ 12]. Commission staff and counsel for Empirex and R. Vargas conferred repeatedly, but it has not borne fruit, as demonstrated below:

- On June 22, 2022, Commission staff spoke with counsel for Empirex and R. Vargas and agreed to provide Empirex and R. Vargas with an extension of time, until July 21, 2022, to complete their production of documents responsive to the Second Subpoenas, provided they made a rolling production. This agreement was then memorialized in an email. [*Id.*];

- On July 14, 2022, the staff called counsel for Empirex and R. Vargas because Empirex and R. Vargas had failed to produce any documents on a rolling basis. Counsel informed that R. Vargas was aware of the deadline for the production of

documents, and R. Vargas was aware of the ramifications of not producing the documents. [*Id.*, ¶ 13];

- On July 22, 2022, a day after production was due under the extended deadline, counsel for Empirex and R. Vargas left a voicemail message and sent an email to the staff stating that his clients had not provided him with any documents for production [*Id.*, ¶ 15];

-  On July 25, 2022, counsel for Empirex and R. Vargas and the staff spoke over the phone about the outstanding production.  Counsel confirmed that he had still not received any documents from his clients. [*Id.*, ¶ 16];

- On July 28, 2022, the staff sent counsel for Empirex and R. Vargas a letter requesting confirmation by August 1, 2022 of whether his clients intended to produce documents, and demanding that such production be completed by August 4, 2022. [*Id., ¶*17]; and

- On August 1, 2022, counsel for Empirex and R. Vargas produced on behalf of his clients seven pages worth of production, specifically, what purports to be two March 5, 2020 independent contractor agreements between Empirex and two entities concerning "Office management activities" and a print out of information concerning Empirex from the "SEC.report" website. Counsel for Empirex and R. Vargas represented that the seven-page document was "responsive to the SEC subpoena dated, June 16, 2022...and [s]hould any additional responsive documents be discovered, we will provide them to you by 5:00 pm on August 4, 2022." [*Id.*, ¶ 18].

11.     Neither Empirex nor R. Vargas have produced any additional documents responsive to the Second Subpoenas. [*Id.*, ¶ 19].  The Commission's Second Subpoenas requested, among other things, documents sufficient to identify Empirex's solicitation of investors, receipt and disposition of investor funds, its relationship to AKC, disbursements from AKC, and communication between Empirex and AKC.  [*Id., ¶* 11].

12.     Given Empirex's statements in social media and on its website about its investment programs and focus on cryptocurrency investments, the alarming uptick in monies received, and the discrepancy in bank accounts identified, it strains credulity that Empirex and R. Vargas would have no other responsive documents beyond the seven pages produced on August 1, 2022 above what was previously produced in response to the First Subpoenas.  Empirex and R. Vargas's continued refusal to comply with the Commission's Second Subpoenas – which explicitly requested production of documents previously requested in the First Subpoenas and not produced – hinders the Commission's ability to conduct its lawful investigation into potential securities violations. The Commission thus seeks an Order to Show Cause for Empirex and R. Vargas to explain why they have not complied.

            **ii**. *Document Subpoena to AKC*

13.     On April 11, 2022, the Commission issued the AKC Subpoena for AKC to produce documents no later than April 25, 2022.  [*Id.,* ¶ 22].  Among other things, the AKC Subpoena seeks production of documents sufficient to identify its control persons, its relationship to Empirex, solicitation of investors for Empirex and AKC offerings, communications between Empirex and AKC, disbursements to Empirex, and receipt and disposition of investor funds.  [*Id.*].

14.     The AKC Subpoena was necessitated because in a review of bank statements and related documents for Empirex's bank accounts, we have identified approximately 75 wires or other transfers were sent from U.S. bank accounts maintained by AKC, totaling over $7.5 million, to Empirex and R. Vargas, collectively.  [*Id.,* ¶ 20; Exh. 2, ¶ 5].  The proceeds from AKC represent approximately 13% of total inflows into the referenced Empirex and R. Vargas bank accounts. [*Id.*].

15.     Prior to the date of production, on April 22, 2022, an attorney contacted the Commission's staff and explained that while he had not yet been formally retained by AKC and P. Vargas, he wanted to request an extension of time to respond to the AKC Subpoena.  [Exh. 1, ¶ 23].  Ms. Springer-Charles explained that the staff could not discuss the subpoena with him until he provided written confirmation that AKC had retained him.  [*Id.*].  Thereafter, on April 26, 2022, the office for this attorney sent written confirmation of retention, and the staff agreed to provide AKC with an extension of time, specifically to May 11, 2022, in which to produce all documents responsive to the AKC Subpoena with the further agreement that AKC would commence producing responsive documents on a rolling basis. [*Id.*, ¶¶ 24, 25].

### iii. *Subpoena for Testimony to P. Vargas*

16.     In anticipation of AKC's production of documents, on May 10, 2022, the Commission issued the P. Vargas subpoena for P. Vargas to appear for remote testimony using the WebEx platform.  [Exh. 1, ¶ 27].  As manager of AKC, P. Vargas would be the person with knowledge of, among other things, AKC, the company's documents (which were required to be produced on May 11, 2022 under the extension), AKC's relationship to Empirex and its role in Empirex's possibly fraudulent offering. [*Id.*].

### iv. The Commission's Good Faith Efforts to Obtain Documents and Testimony Pursuant to the AKC and P. Vargas Subpoenas

17.  On April 29, 2022, during a telephone conversation with counsel for AKC and P. Vargas, Ms. Springer-Charles reminded counsel for AKC and P. Vargas of the May 11, 2022 due date for AKC's production of documents under the subpoena, and sent him again another copy of the April 27, 2022 email confirming the extension date.  [*Id.*, ¶ 26].

18.  As of May 11, 2022, AKC had not produced any documents responsive to the AKC Subpoena.  [*Id.,* ¶ 28].  During a May 11, 2022 telephone conversation with the staff, counsel for AKC and P. Vargas stated, among other things, that he planned to meet with his client on May 13, 2022 to discuss AKC's production of documents and would get back to Ms. Springer-Charles that day with the date on which we could expect all responsive documents. [*Id.*, ¶ 29].  He did not do so. [*Id.*]. Thereafter, the staff made numerous efforts to contact counsel for AKC and P. Vargas and follow up on AKC's overdue document production:

- The staff telephoned counsel for AKC and P. Vargas and left him voicemails on May 16, 17, and 20, 2022; each phone call was followed up with an email reminding counsel for AKC and P. Vargas that AKC's production was overdue.  [*Id.,* ¶ 30].

- Counsel for AKC and P. Vargas was aware of the staff's efforts to speak with him, because he texted Ms. Springer-Charles on May 17, 2022 stating he was in a "reverse proffer with the [United States Attorney's Office]," [*Id.*], but he did not otherwise return any of the calls, messages or emails;

- On May 31, 2022, the staff sent counsel for AKC and P. Vargas a letter outlining the Commission's good faith efforts to obtain production of documents from AKC responsive to the AKC Subpoena.  The staff's letter also reminded counsel for AKC

and P. Vargas of the date for P. Vargas' appearance for testimony pursuant the AKC Subpoena. [*Id.*, ¶ 31]; and

- On June 1, 2022, the staff emailed counsel for AKC and P. Vargas asking, among other things, for his and P. Vargas' understanding and agreement to certain procedures that would be in place at P. Vargas' testimony. [*Id.*, ¶ 32].

19.     Other than the May 17, 2022 text message counsel for AKC and P. Vargas sent to staff stating he was in a "reverse proffer," the staff did not hear from him or his office until June 1, 2022, when his paralegal emailed to ask what federal district court action was associated with P. Vargas Subpoena for testimony. [*Id.*, ¶ 33].  The Commission staff responded to the email on June 2, 2022, advising counsel for AKC and P. Vargas that there was no ongoing federal litigation, but rather, the P. Vargas' subpoena was issued pursuant to the Formal Order in the Empirex investigation. [*Id.*, ¶ 34].

20.     Thereafter, on June 2, 2022, counsel for AKC and P. Vargas emailed the staff:  (1) AKC's Objections to Subpoena; and (2) P. Vargas' Objections to Subpoena.  [*Id.*, ¶ 35].  AKC objects to producing any responsive documents, claiming that "the subpoena is being issued as a fishing expedition and that most if not all of the documents being sought is [sic] not relevant to the investigation pending and was issued in bad faith."  [*Id.*].  P. Vargas objects to appearing for testimony because "she is also under criminal investigation by the government and any statements or testimony she provides could be used in the criminal investigation." [*Id.*].

21.     Although AKC and P. Vargas have raised different grounds for not producing documents and appearing for testimony, respectively, the objections and responses made clear that the "SEC must seek an enforcement action in a United States District Court."  [*Id.*].

### v. *Respondents Must be Compelled to Comply with Lawfully Issued Subpoenas*

22.     The Commission has exhausted all efforts to obtain documents from Empirex, R. Vargas, AKC, and testimony from P. Vargas.  Empirex and R. Vargas have failed to produce any documents in response to the Second Subpoenas besides the aforementioned seven pages.  AKC and P. Vargas (its manager) have produced nothing, and P. Vargas refuses to appear for testimony, all the while raising baseless objections to the Commission's lawfully issued subpoenas. Accordingly, the Commission seeks an Order to Show Cause why Empirex, R. Vargas, and AKC should not produce documents, and why P. Vargas should not appear for testimony pursuant to their respective subpoenas and an Order requiring compliance with the subpoenas by date certain.

### III.  <u>MEMORANDUM OF LAW</u>

### A.  <u>The Court Has Jurisdiction and Venue Properly Lies In This District</u>

Congress gave the Commission broad authority to conduct investigations and require production of evidence and testimony relevant to those investigations.  *See, e.g.*, Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b) ("For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence . . . ."); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the Commission with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission"); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

When parties refuse to comply with lawful Commission demands for documents and testimony issued pursuant to the Commission's broad statutory authority to investigate, Congress has authorized the Commission to seek, and the federal courts to issue, orders compelling production or testimony.  "In case of . . . refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records." Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).  That very language also provides that venue lies in the Southern District of Florida, as it provides the Commission may seek a court order "within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business."  *Id*.

Here, venue is proper in this district because the investigation is being carried on in, and originally required Respondents to appear and produce documents in, the Southern District of Florida.  [Exh. 1, ¶¶ 8, 11, 22, 27].  There is personal jurisdiction over Empirex, R. Vargas, AKC, and P. Vargas because they are located and reside in the Southern District of Florida.

## B. The Court Should Conduct a Summary Proceeding

Subpoena enforcement actions are generally summary in nature and the Court may therefore hear them in summary fashion without strict adherence to the Federal Rules of Civil Procedure.  *United States v. Elmes*, 532 F. 3d 1138, 1143 (11th Cir. 2008) (under Rule 81(a)(3) of the Federal Rules of Civil Procedure "the district court has discretion to deny hearings or limit the applicability of discovery in a proceeding to compel the production of documents in accordance with a subpoena issued by an officer or agency of the United States"); *SEC v. Sprecher*, 594 F.2d 317, 320 (2d Cir. 1979) (upholding right of district court to enforce subpoenas in summary

proceedings without the filing of a complaint pursuant to Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), which allows a district court to enforce a subpoena "upon application by the Commission"); *Elmes,* 532 F. 3d at 1141-42.

Accordingly, the Commission asks the Court to promptly set an Order to Show Cause Hearing so that Respondents' failure to comply with the subpoenas is not allowed to continue. *SEC v. First Security Bank*, 447 F.2d 166, 168 (10th Cir. 1971); *SEC v. Marin,* Case No. 1:19-mc-20493-UU-O'Sullivan, 2019 WL 3430486 at *3-5 (S.D. Fla. May 31, 2019).

## C.  <u>The Commission's Subpoenas Satisfy All Requirements for Enforcement</u>

A district court's role in a proceeding to enforce an administrative subpoena "is limited." *SEC v. Marin*, 982 F.3d 1341, 1352 (11th Cir. 2020); *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996).  Under that limited review, a court should enforce an administrative subpoena if it is reasonably relevant to an authorized investigation.  *Tire Kingdom*, 80 F.3d at 450; *EEOC v. Technocrest Sys.,* 448 F.3d 1035, 1040 (8th Cir. 2006).

Courts have generally looked at four criteria to determine whether to enforce a Commission subpoena: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enterprises, Inc. v. SEC,* 122 F.3d 93, 96-97 (2d Cir. 1997); *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973).  "All the agency must do in the first instance is make out a prima facie showing that [these criteria] are met." *Marin*, 982 F.3d at 1352.  Thereafter, the burden shifts to a respondent demonstrate that enforcement would be unreasonable.  *Id.; Brigadoon Scotch,* 480 F.2d at 1056.  However, the burden of showing unreasonableness "is not

easily met" as long as the Commission's inquiry is legally authorized and the information it seeks is relevant to the inquiry. *Id.*

### *i. The Commission's Purpose is Lawful*

As discussed above, Congress has given the Commission broad authority to investigate whether the federal securities laws, rules, and regulations "have been or are about to be violated." Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b). Pursuant to that authority, the Commission issued the Formal Order authorizing designated officers to conduct an investigation into possible violation of Sections 5(a), 5(c) and Section 17 (a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 by Empirex, R. Vargas and others. [Exh. 1, ¶ 2].

Pursuant to the authority conferred under the Formal Order, the Commission's investigative team issued subpoenas to Empirex, R. Vargas, and AKC seeking production of documents, and a subpoena to P. Vargas (AKC's managing member and sister of R. Vargas) seeking her testimony. [Exh. 1, ¶¶ 8, 11, 22, 27]. The subpoenas are within the parameters of the Commission's broad discretion to investigate:

> For the purpose of any such investigation, or any other proceeding under this chapter, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry.

15 U.S.C. §78u(b); *see also O'Brien,* 467 U.S. at 745 ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *Dresser Indus.*, 628 F.2d at 1380 (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

Accordingly, the Commission's purpose in issuing the subpoena was lawful.

### ii. The Commission Seeks Relevant Information

The measure of relevance used in subpoena enforcement actions is "quite broad." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994). A district court may enforce a subpoena so long as "the materials sought are *not clearly irrelevant or immaterial*." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1029 (D.C. Cir. 1978) (upholding district court's use of that language as standard for relevance) (emphasis added). The subpoenas issued to Respondents are more than sufficient to meet this broad standard.

The documents requested for production from Respondents are highly relevant to the Commission's investigation. The investigation concerns whether Empirex, R. Vargas and others have engaged in an unregistered, securities offering, whether any potential violations are ongoing, and the use and dissipation of investor funds. Empirex has made numerous public statements on social media and on its website, among other places, about its cybercurrency investment opportunities, touting returns of as high as 18%, and claims to have raised at least $5 million. Bank records show that its fundraising efforts have paid off, with deposits reaching $55 million. R. Vargas has appeared for testimony, but when asked substantive questions about Empirex's investment programs, the number of investors, amount Empirex has raised, use or disposition of those funds, he asserted his Fifth Amendment privilege against self-incrimination.

Regarding AKC and P. Vargas, bank records show that at least 13% of funds flowing into Empirex came from AKC. This evidence indicates that Empirex and its principal, R. Vargas, may have used AKC – a shell limited liability company created by R. Vargas' sister – to fraudulently raise funds from investors and funnel the cash to Empirex. The AKC Subpoena seeks documents sufficient to show, among other things, the relationship between the two companies, the control of

AKC (including its bank accounts and digital assets accounts), and whether AKC has been used to violate federal securities laws.

For the same reasons, P. Vargas' testimony is highly relevant to the investigation.  P. Vargas is the managing member of AKC and presumably can testify about its own documents, the relationship between Empirex and AKC, and the flow of funds between Empirex and AKC's bank accounts. P. Vargas recognizes the relevance of her testimony as to the issues central to the Commission's investigation.  The sole basis of her refusal to appear for testimony is that she is under criminal investigation and that her testimony in the Commission's investigation may implicate her in that criminal investigation.  This alone is more than sufficient to establish the relevance of the Commission's subpoenas to AKC and P. Vargas.

### iii.  Respondents Possess Information the Commission Lacks

Empirex, R. Vargas, AKC, and P. Vargas possess information the Commission lacks.  The requested documents and testimony may provide critical information regarding whether Empirex has violated the securities laws, whether Empirex is engaged in ongoing misconduct, the roles of other entities and individuals (such as AKC and P. Vargas), and potential efforts to obfuscate or dissipate investor funds.

### iv. The Commission Has Satisfied All Necessary Administrative Steps

The Commission issued all subpoenas in accord with all applicable administrative requirements.  Section 19(b) of the Securities Act, 15 U.S.C. § 77s(b), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), empower the Commission to subpoena documents and testimony in the course of investigations.  Here, Shelly-Ann Springer-Charles, an attorney for the Division of Enforcement, designated as an officer of the Commission in the Formal Order, issued the subpoenas to Empirex, R. Vargas, AKC and P. Vargas. [Exh. 1, ¶¶ 8, 11, 22, 27].

D. **Respondents Cannot Show the Subpoenas Are Unreasonable
   and Their Excuses for Non-Compliance Lack Merit**

As set forth above, the Commission has satisfied all requirements for enforcement of the subpoenas.  Accordingly, Respondents would have to demonstrate that the subpoenas are unreasonable. *Brigadoon Scotch,* 480 F.2d at 1056.  Because the Commission's inquiry is legally authorized and the Commission seeks information relevant to the Investigation, Respondents' burden "is not easily met." *Id.*  Indeed, Respondents Empirex and R. Vargas have not argued that any subpoena is unreasonable.  Instead, Empirex and R. Vargas have fallen far short of their obligation to comply with the Second Subpoenas.  And while AKC and P. Vargas have raised arguments in response to their respective subpoenas, these arguments are legally insufficient.

AKC has refused to comply with the subpoena for documents largely on relevance grounds, arguing that "the subpoena is being issued as a fishing expedition and that most if not all of the documents being sought is [sic] not relevant to the investigation pending and was issued in bad faith." [Exh. 1, ¶ 35]. AKC further claims that it has "limited to no involvement with the investigation" and that the subpoena was issued to "threaten and/or harass" AKC into producing documents whether relevant or not.  [*Id.*].

These arguments must fail in light of the standards applicable to administrative subpoenas. The relevance standard for an administrative subpoena is "quite broad." *Marin*, 982 F.3d at 1355. A district court may enforce the subpoena if the documents or testimony "touch[ ] a matter under investigation." *Id.*  Given the relationship between R. Vargas, who controls Empirex, and P. Vargas (manager of AKC), and the information already uncovered in this investigation showing

the substantial cash that AKC has funneled to Empirex, the Commission's subpoenas to both AKC and P. Vargas are plainly relevant.[3]

The only objection P. Vargas has raised for refusing to appear for testimony is that she is under criminal investigation and – tacitly admitting the relevance of the Commission's subpoenas – argues that any statements she makes in her testimony before the Commission could incriminate her in the criminal investigation.  [Exh. 1, ¶ 35].  Presumably, if P. Vargas were compelled to provide testimony before the Commission in this investigation, she would assert her Fifth Amendment privilege against self-incrimination.

The fact that P. Vargas is under criminal investigation and, if compelled to testify, would instead assert her Fifth Amendment privilege is not sufficient to prevent the subpoena's enforcement. "Although 'the Fifth Amendment protects a party from self-incrimination; it does not protect someone from having to invoke the right to avoid self-incrimination in the first place.'" *SEC v. Kimmel,* No. 19-mc-00113-CMA, Order Compelling Compliance with Administrative Subpoena, 2020 WL 2800813 at *3 (D. Colo. May 29, 2020) (*quoting SEC v. Caramadre*, 717 F. Supp. 2d 217, 222 (D.R.I. 2010)).

*SEC v. Kimmel* is directly on point.  In that case, the SEC issued a subpoena for testimony to Kimmel in connection with the Commission's ongoing investigation in an insider trading case. Before he was scheduled to appear for testimony, Kimmel's counsel sent the staff a letter referencing an ongoing criminal investigation, and objecting to having to appear in for testimony.

---

[3] Moreover, the SEC's investigative powers are not limited to the specific entities named in a formal order. *Marin*, 982 F.3d at 1353, *citing SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. at 749 ("The SEC often undertakes investigations into suspicious securities transactions without any knowledge of which of the parties involved may have violated the law."); *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 98 (2d Cir. 1997) (noting statutes and regulations governing the SEC do not "require that the order authorizing the investigation target by name a specific company or person suspected of violating securities laws").

*Id.* at 1.  Kimmel argued that if forced to appear he would be faced with a "true Hobson's Choice" of either waiving his privilege and possibly incriminating himself, or asserting his Fifth Amendment privilege and impairing his defense in a civil case through a negative inference.  *Id.* The district court rejected this argument and ordered Kimmel to appear for testimony, holding that compliance with the subpoena does not improperly or unreasonably burden Kimmel's exercise of the privilege.  *Id.* at *3.

Moreover, although P. Vargas may be within her right to assert her Fifth Amendment privilege against self-incrimination, she must expressly do so herself and on the record, rather than through her attorney.  *State of Florida ex rel. Butterworth v. Southland Corp.*, 684 F. Supp. 292, 294-95 (S.D. Fla. 1988):

> A witness must state the specific basis for objection on the record, e.g., 'Fifth Amendment privilege against self-incrimination.'  Furthermore, the witness must assert any claim of privilege on a question-by-question basis, rather than assert a blanket privilege as to all questions.

*Id.* at 294, *citing Hoffman v. United States,* 341 U.S. 479 (1951).

Finally, P. Vargas cannot show an undue burden in complying with the Commission's subpoena.  Despite that she is a resident of Miami, Florida (where the regional office conducting the investigation is located), the Commission nonetheless only requested her appearance by audio-visual teleconference, obviating the need for her and her attorney to travel to the Commission's office. During her testimony, P. Vargas can assess (with advice of counsel) whether she will raise her Fifth Amendment privilege against self-incrimination as to each question posed to her.

## IV. <u>CONCLUSION</u>

The Commission has satisfied all the requirements for enforcement of the subpoenas. Accordingly, for the foregoing reasons, the Commission respectfully requests this Court order

Respondents to show cause why they should not comply with the respective subpoenas issued to them, and, after a hearing, order them to comply fully with their respective subpoenas.

Dated: August 30, 2022

Respectfully submitted,

By:    /s/ *Teresa J. Verges*
Teresa J. Verges
Regional Trial Counsel
Fla. Bar No. 0997651
Direct Dial: (305) 982-6376
Email: vergest@sec.gov

Russell Koonin
Senior Trial Counsel
Fla. Bar No. 474479
Direct Dial: (305) 982-6390
Email: kooninr@sec.gov

Attorneys for Applicant
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154