# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MISC. NO.:

SECURITIES AND EXCHANGE COMMISSION,

      Applicant,

v.

EMPIREX CAPITAL LLC,
AKC MANAGEMENT LLC,
RAFAEL ALBERTO VARGAS
GONZALEZ, a/k/a RAFAEL VARGAS,
and
PAOLA A. VARGAS,

      Respondents.
_____/

**DECLARATION OF SHELLY-ANN A. SPRINGER-CHARLES IN SUPPORT OF
SECURITIES AND EXCHANGE COMMISSION'S APPLICATION
FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING
COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS**

      SHELLY-ANN A. SPRINGER-CHARLES, pursuant to 28 U.S.C. §1746, declares under

penalty of perjury as follows:

      1.      I am an attorney in the Miami Regional Office of the U.S. Securities and

Exchange Commission, located at 801 Brickell Avenue, Suite 1950, Miami, Florida 33131.  I am

over twenty-one years of age and have personal knowledge of the matters set forth herein.  This

declaration is submitted in support of the SEC's Application for an Order To Show Cause and

for an Order Requiring Compliance with Administrative Subpoenas against Empirex Capital

LLC, ("Empirex"), Empirex's sole owner and manager, Rafael Alberto Vargas Gonzalez, a/k/a

Rafael Vargas ("R. Vargas"), AKC Management LLC ("AKC"), and AKC's manager, Paola A.

Vargas ("P. Vargas").

### *The Commission's Investigation*

2.        On March 24, 2021, the Commission issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony in In the Matter of Empirex Capital LLC (FL-04274) (the "Formal Order").  A true and correct copy of the Formal Order is attached hereto as **Attachment A**.

3.        Under the Formal Order, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation.

4.        On January 26, 2022, the Commission issued a Supplemental Order Designating Additional Officers in In the Matter of Empirex Capital LLC (FL-04274).  On August 29, the Commission issued a second Supplemental Order Designating an Additional Officer (the "**Supplemental Formal Orders**").  True and correct copies of the Supplemental Formal Orders are attached hereto as composite **Attachment B**.

5.        The Formal Order directs the Commission's staff to conduct a private investigation to determine whether Empirex, its officers, directors, employees, partners, subsidiaries, affiliates and/or other persons or entities, have engaged in the enumerated potential violations of the securities registration and antifraud provisions of the federal securities laws, specifically, violations of Section 5(a), 5(c), and 17(a) of the Securities Act of 1933 (**"Securities Act"**) and Section 10(b) of the Securities Exchange Act of 1934 (**"Exchange Act"**) and Rule 10b-5 thereunder.  This investigation is being conducted out of the Commission's Miami Regional Office located in Miami, Florida.  Issues central to the potential violations include

whether Empirex and R. Vargas, have engaged in a fraudulent securities offering, whether any potential securities laws violations are ongoing, and the use and dissipation of investor funds.

6.     Our investigation has revealed that Empirex, a Florida limited liability company based in Coral Gables, Florida, appears to be a private fund.  Empirex is solely owned and managed by R. Vargas.  Empirex has made numerous public statements through social media and LinkedIn, and on YouTube and its publicly available website about its investment plans. Empirex originally purported to invest in traditional markets, cryptocurrency markets, and mixed markets.  More recently, the focus has been on investments in cryptocurrency markets.  Empirex has claimed to provide returns to investors of up to 8% monthly.  Further, investor agreements with Empirex obtained by the Commission refer to returns of up to 18% monthly.  This is a sampling of Empirex's website:



7.     In a 2020 filing with the Commission indicating that Empirex was relying on an exemption to registration (available only for accredited investors), Empirex further represented that it had raised at least $5 million from investors.

### *The Subpoenas to Empirex and R. Vargas*

8.      As part of the investigation conducted pursuant to the Formal Order, on April 20, 2021 I issued two separate subpoenas to Empirex and R. Vargas for the production of documents ("**First Subpoenas**").  A true and correct copy of the subpoena issued to Empirex is attached hereto as **Attachment C** and a true and correct copy of the subpoena issued to R. Vargas is attached hereto as **Attachment D**.

9.      Although Empirex and R. Vargas did produce documents responsive to the First Subpoenas, based on information we have learned through this investigation, including documents we subpoenaed from, among others, U.S. banks where Empirex maintained bank accounts, we believe that Empirex and R. Vargas' production pursuant to the First Subpoenas were incomplete.  For example, Empirex and R. Vargas collectively produced bank account statements for two bank accounts, one for each.  However, through investigation, we have learned that from April 2018 through May 2022 there were at least $55 million in deposits or transfers into 26 Empirex and R. Vargas bank accounts, collectively.

10.      As part of the investigation conducted pursuant to the Formal Order, we also issued to R. Vargas a subpoena for testimony, which took place by audio-visual teleconference means, using the WebEx Internet platform, on March 11, 2022.  A true and correct copy the Commission staff's email to then counsel for R. Vargas attaching the Commission's January 19, 2022 subpoena issued to R. Vargas is attached hereto as **Attachment E**.  R. Vargas invoked his Fifth Amendment privilege against self-incrimination to certain substantive questions during his investigative testimony, including, but not limited to, the number of investors Empirex had from

inception to the present, how much total funds Empirex raised from investors from inception to the present, and the use of Empirex investor funds.

11.     As a result of concerns that Empirex and R. Vargas had not made a full production, and our desire to obtain more current information, on June 16, 2022 I issued two new subpoenas to Empirex and R. Vargas ("**Second Subpoenas**").   I served the Second Subpoenas on Empirex and R. Vargas' counsel (same counsel) who agreed to accept service of the Second Subpoenas.  A true and correct copy of the Commission staff's email to counsel for Empirex and R. Vargas attaching the Second Subpoenas is attached as **Attachment F.**

12.     The Second Subpoenas required Empirex and R. Vargas to produce documents on June 30, 2022.  On June 22, 2022, I spoke with counsel for Empirex and R. Vargas and agreed to provide Empirex and R. Vargas with an extension of time, until July 21, 2022, to complete their production of documents responsive to the Second Subpoenas, provided they made a rolling production.  I memorialized this agreement in an email to counsel for Empirex and R. Vargas.  A true and correct copy of this e-mail is attached hereto as **Attachment G**.

13.     On July 14, 2022, I contacted counsel for Empirex and R. Vargas via phone and left him two voice-mails to check on the status of R. Vargas and Empirex's rolling production of documents, as I had not yet received any documents responsive to the Second Subpoenas. Counsel informed me that R. Vargas was aware of the deadline for the production of documents, and R. Vargas was aware of the ramifications of not producing the documents.

14.     As of July 21, 2022, Empirex and R. Vargas had not produced any documents responsive to the Second Subpoenas.

15.     On July 22, 2022, counsel for Empirex and R. Vargas left me a voice-mail stating, he wanted to provide an update on Empirex and R. Vargas' production.  He also sent me an

email later that day stating, at that moment, he had not received any documents from his client. A true and correct copy of this e-mail is attached hereto as **Attachment H**.

16.     On July 25, 2022, counsel for Empirex and R. Vargas and I spoke over the phone about the outstanding production.  Counsel confirmed that he had still not received any documents from his clients.

17.     On July 28, 2022, I sent counsel for Empirex and R. Vargas a letter requesting confirmation by August 1, 2022 of whether his clients intended to produce documents, and demanding that such production be completed by August 4, 2022.  A true and correct copy of an e-mail sent by a Commission legal assistant attaching that letter and the corresponding attachment is attached hereto as **Attachment I**.

18.     On August 1, 2022, counsel for Empirex and R. Vargas produced on behalf of his clients seven pages worth of production, specifically, what purports to be two March 5, 2020 independent contractor agreements between Empirex and two entities concerning "Office management activities" and a print out of information concerning Empirex from the "SEC.report" website.  Counsel for Empirex and R. Vargas represented that the seven-page document was "responsive to the SEC subpoena dated, June 16, 2022...[and] [s]hould any additional responsive documents be discovered, we will provide them to you by 5:00 pm on August 4, 2022."  A true and correct copy of an email and accompanying attachments containing that production is attached hereto as **Attachment J**.

19.     To date, neither Empirex nor R. Vargas have produced any additional documents responsive to the Second Subpoenas.

### ***Document Subpoena to AKC and Subpoena for Testimony to P. Vargas***

20.     Crystal Ivory, Commission Senior Staff Accountant reviewed bank statements and related documents for Empirex's bank accounts. In this review, she identified approximately 75 wires or other transfers were sent from U.S. bank accounts maintained by AKC, totaling over $7.5 million, to Empirex and R. Vargas, collectively.  Ms. Ivory's review indicated that the proceeds from AKC represent approximately 13% of total inflows into the referenced Empirex and R. Vargas bank accounts.

21.     Florida records show that AKC's manager is P. Vargas.  P. Vargas and R. Vargas are siblings.

22.     On April 11, 2022, I issued a subpoena to AKC to produce documents no later than April 25, 2022 (**"AKC Subpoena"**).  Among other things, the AKC Subpoena seeks production of documents sufficient to identify its control persons, its relationship to Empirex, solicitation of investors for Empirex and AKC offerings, communications between Empirex and AKC, disbursements to Empirex, and receipt and disposition of investor funds.  A true and correct copy of AKC Subpoena is attached hereto as **Attachment K**.

23.     On April 22, 2022, an attorney telephoned me and confirmed that P. Vargas is R. Vargas' sister.  He explained that while he had not yet been formally retained by AKC and P. Vargas, he wanted to request an extension of time to respond to the AKC Subpoena.  I explained to the attorney that I could not discuss any confidential and non-public investigations with him without written confirmation of his representation of AKC and P. Vargas.

24.     On April 26, 2022, the office for this attorney sent written confirmation of retention by AKC and P. Vargas.  A true and correct copy of the AKC and P. Vargas' representation letter is attached hereto as **Attachment L**.

25.     On April 27, 2022, I e-mailed counsel for AKC and P. Vargas and agreed to provide AKC an extension of time, specifically to May 11, 2022, in which to produce all documents responsive to the AKC Subpoena with the further agreement that AKC would commence producing responsive documents on a rolling basis.  A true and correct copy of this e-mail is attached hereto as **Attachment M**.

26.     On April 29, 2022, during a phone call with counsel for AKC and P. Vargas, I reminded him of the May 11, 2022 due date for AKC's production of documents, and sent him again another copy of the April 27, 2022 email confirming the extension date.  A true and correct copy of this e-mail is attached hereto as **Attachment N**.

27.     In anticipation of AKC's production of documents, on May 10, 2022 I issued a subpoena to P. Vargas for testimony (**"P. Vargas Subpoena"**).  As manager of AKC, P. Vargas would be the person with knowledge of, among other things, AKC, the company's documents (which were required to be produced on May 11, 2022 under the extension), AKC's relationship to Empirex and its role in Empirex's possibly fraudulent offering.  I served the P. Vargas Subpoena on counsel for AKC and P. Vargas, who agreed to accept service.  The P. Vargas Subpoena directed P. Vargas to appear for testimony, conducted by audio-visual teleconference means, using the WebEx Internet platform, on June 8, 2022 at 10:00 a.m. EDT.  A true and correct copy of an e-mail sent by a Commission senior paralegal specialist to counsel for AKC and P. Vargas attaching the P. Vargas Subpoena is attached hereto as **Attachment O**.

28.     As of May 11, 2022, AKC had not produced any documents responsive to the AKC Subpoena.

29.     On May 11, 2022, I spoke with counsel for AKC and P. Vargas over the phone about AKC's production.  Counsel for AKC and P. Vargas stated that he planned to meet with

his client on May 13, 2022 to discuss AKC's production of documents and would get back to me that day with the date on which we could expect all responsive documents.  I did not hear from counsel for AKC and P. Vargas on May 13, 2022.

30.     On May 16, 17, and 20, 2022, I telephoned counsel for AKC and P. Vargas three times and left him three voice-mails requesting information about AKC's production.  I also sent counsel for AKC and P. Vargas three e-mails reminding him that AKC's production was overdue.  True and correct copies of those e-mails are attached hereto as **Attachment P**.  While leaving my May 17, 2022 voice-mail for counsel for AKC and P. Vargas, counsel for AKC and P. Vargas sent me a text message stating that he was in a reverse proffer with the "USAO."  I did not otherwise receive a response from counsel for AKC and P. Vargas to my voice-mails and e-mails on those dates.   A true and correct copy of this text message is attached hereto as **Attachment Q**.

31.     Having heard nothing from counsel for AKC and P. Vargas, on May 31, 2022, I sent counsel for AKC and P. Vargas a letter outlining our good faith efforts to obtain responsive documents from AKC and requested that AKC produce all documents responsive to the AKC Subpoena.  I also reminded counsel for AKC and P. Vargas of the upcoming date for P. Vargas' appearance for testimony on June 8, 2022 pursuant to the P. Vargas Subpoena, and sought to confirm the procedure for her remote testimony.  A true and correct copy of an e-mail sent by a Commission senior paralegal specialist attaching that letter and the corresponding attachment is attached hereto as **Attachment R**.

32.     On June 1, 2022, I e-mailed counsel for AKC and P. Vargas asking for his and P. Vargas' understanding and agreement to certain procedures that would be in place at P. Vargas' testimony.  A true and correct copy of that e-mail is attached hereto as **Attachment S**.

9

33.     On June 1, 2022, counsel for AKC and P. Vargas' paralegal e-mailed me to inquire about the civil case number in the district court associated with the P. Vargas Subpoena. A true and correct copy of that e-mail is attached hereto as **Attachment T**.

34.     On June 2, 2022, I responded via e-mail to counsel for AKC and P. Vargas' paralegal and informed her we did not have a federal district court action associated with the Empirex investigation; rather, the P. Vargas Subpoena was issued pursuant to a formal order of private investigation entered by the Commission in connection with our ongoing investigation. A true and correct copy of that e-mail is attached hereto as **Attachment U**.

35.     Later that day, counsel for AKC and P. Vargas' paralegal sent me via e-mail the following two documents: (1) AKC Management, LLC's Objections to Subpoena and (2) Paola Vargas' Objections to Subpoena. Although AKC's and P. Vargas' responses raised different grounds for not complying with the Commission's subpoenas, both made clear that AKC was not producing any documents and P. Vargas would not appear for testimony, and that the "SEC must seek an enforcement in a United States District Court." AKC objects to producing any responsive documents, claiming that "the subpoena is being issued as a fishing expedition and that most if not all of the documents being sought is [sic] not relevant to the investigation pending and was issued in bad faith." AKC further claims that it has "limited to no involvement with the investigation" and that the subpoena was issued to "threaten and/or harass" AKC into producing documents whether relevant or not. P. Vargas objects to appearing for testimony because "she is also under criminal investigation by the government and any statements or testimony she provides could be used against her in the criminal investigation." A true and correct copy of the e-mail sent by counsel for AKC and P. Vargas' paralegal and the corresponding attachments are attached hereto as **Attachment V**.

36.     As of June 30, 2022, AKC was voluntarily dissolved.  On July 13, 2022, I sent P. Vargas, through counsel for AKC and P. Vargas, a letter giving her notice that she and AKC should preserve all documents and records requested in the AKC subpoena.  A true and correct copy of an e-mail sent by a Commission senior paralegal specialist attaching that letter and the corresponding attachments are attached hereto as **Attachment W**.

37.     To date, AKC has failed to produce documents and P. Vargas has failed to appear for testimony under their respective subpoenas.

38.     The documents and testimony sought by the subpoenas issued to Empirex, R. Vargas, AKC, and P. Vargas are necessary to the Commission's investigation of potential securities violations and are expected to provide additional relevant information that is currently unavailable from any other known source, such as whether Empirex, R. Vargas and others have engaged in an unregistered, securities offering, whether any potential violations are ongoing, and the use and dissipation of investor funds.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 29th day of August, 2022, in Miami, Florida.

SHELLY-ANN
SPRINGER-CHARLES

Digitally signed by SHELLY-ANN
SPRINGER-CHARLES
Date: 2022.08.29 17:11:45
-04'00'

_____
Shelly-Ann A. Springer-Charles
Senior Counsel

# ATTACHMENT  A

# NON-PUBLIC

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**
**March 24, 2021**

In the Matter of

**Empirex Capital LLC**

FL-04274

**ORDER DIRECTING PRIVATE**
**INVESTIGATION AND DESIGNATING**
**OFFICERS TO TAKE TESTIMONY**

## I.

The Commission has information that tends to show that at least from May 2019:

A.     Empirex Capital LLC ("Empirex") is a Florida limited liability company with its principal place of business in Miami, Florida.  Empirex is not registered with the Commission in any capacity.

B.      In possible violation of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), Empirex, its officers, directors, employees, partners, subsidiaries, and/or affiliates, and other persons or entities directly or indirectly, may have been or may be offering to sell, selling, and delivering after sale to the public, or may have been or may be offering to sell or to buy through the use or medium of any prospectus or otherwise, certain securities, including, but not limited to security interests in Empirex, as to which no registration statement was or is in effect or on file with the Commission, and for which no exemption was or is available. While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been or may be making use of any means or instruments of transportation or communication in interstate commerce or of the mails.

C.     In possible violation of Section 17(a) of the Securities Act, Empirex, its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, in the offer or sale of certain securities, may have been or may be employing devices, schemes, or artifices to defraud, obtaining money or property by means of untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were or are made, not misleading, or engaging in transactions, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon the purchaser.  As part of or in connection with these activities, such persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts concerning, among other things, the use of investor funds and the promised return on investment.

While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been or may be using any means or instruments of transportation or communication in interstate commerce or using the mails.

D.      In possible violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, Empirex, its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, in connection with the purchase or sale of certain securities, may have been or may be employing devices, schemes, or artifices to defraud, making untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were or are made, not misleading, or engaging in acts, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon any person.  In connection with these activities, such persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts concerning, among other things, the use of investor funds and the promised return on investment.  While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been or may be making use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange.

## II.

The Commission, deeming such acts and practices, if true, to be possible violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, finds it necessary and appropriate and hereby:

ORDERS, pursuant to the provisions of Section 20(a) of the Securities Act and Section 21(a) of the Exchange Act that a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object; and

FURTHER ORDERS, pursuant to the provisions of Section 19(c) of the Securities Act, and Section 21(b) of the Exchange Act that for purposes of such investigation, Eric I. Bustillo, Glenn S. Gordon, Eric R. Busto, Shelly-Ann A. Springer-Charles, John T. Houchin, Barbara Viniegra, Jordan Cortez, Fernando Torres, Mark S. Dee, Kathleen E. Strandell, Lina M. Fernandez, Crystal C. Ivory, Andrew Schiff, Christine Nestor, Amie R. Berlin, Wilfredo Fernandez, Robert K. Levenson, Alise Johnson Henry, Stephanie Moot, and Alice Sum, and each of them, are hereby designated as officers of the Commission and are empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[1]

Vanessa A. Countryman
Secretary

Action as set forth or recommended herein APPROVED pursuant to authority delegated by the Commission under Public Law 87-592.

For:            Division of Enforcement

By:            *Glenn S. Gordon*

Glenn S. Gordon, Associate Regional Director

Date Approved:    March 24, 2021

> Ratified by Gurbir Grewal
> Director, Division of Enforcement
> Securities and Exchange Commission
> March 15, 2022

---

[1] 17 CFR 200.30-4(a)(13)

# **ATTACHMENT  B**

## NON-PUBLIC

### UNITED STATES OF AMERICA
#### Before the
### SECURITIES AND EXCHANGE COMMISSION

| | |
|---|---|
| In the Matter of<br><br>      Empirex Capital LLC<br><br>FL-04274 | **SUPPLEMENTAL ORDER DESIGNATING ADDITIONAL OFFICERS** |

IT IS ORDERED that the order of the Commission adopted on March 24, 2021, authorizing a private investigation of the above captioned matter, based upon possible violations of the provisions of the federal securities laws, be and it is hereby amended by designating as additional officers of the Commission, Melika Hadziomerovic, Carol Der Garry, Julia D'Antonio, Karaz S. Zaki, and Teresa Verges.

For the Commission, pursuant to delegated authority, by the Division of Enforcement.[1]


Vanessa A. Countryman
Secretary

Action as set forth or recommended herein APPROVED pursuant to authority delegated by the Commission under Public Law 87-592.

For:          Division of Enforcement

By:          *Glenn S. Gordon*

          Glenn S. Gordon, Associate Regional Director


Date Approved:          January 26, 2022

---

[1]  17 C.F.R. 200.30-4(a)(1).

Ratified by Gurbir Grewal
Director, Division of Enforcement
Securities and Exchange Commission
March 15, 2022

## NON-PUBLIC

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

August 29, 2022

| |
|---|
| **In the Matter of**<br><br>    **Empirex Capital LLC**<br><br>**FL-04274** |

**SUPPLEMENTAL ORDER DESIGNATING AN ADDITIONAL OFFICER**

IT IS ORDERED that the order of the Commission adopted on March 24, 2021, and ratified on March 15, 2022, authorizing a private investigation of the above captioned matter, based upon possible violations of the provisions of the federal securities laws, be and it is hereby amended by designating as an additional officer, Russell Koonin.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[1]

Gurbir S. Grewal
Director, Division of Enforcement

Date Approved:   August 29, 2022

---

[1]  17 C.F.R. 200.30-4(a)(1); Public Law 87-592.

# ATTACHMENT  C



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Shelly-Ann A. Springer-Charles
Senior Counsel
(305) 416-6224
springers@sec.gov

April 20, 2021

<u>VIA OVERNIGHT DELIVERY</u>
Empirex Capital LLC
c/o Rafael Vargas, MGR, Registered Agent
848 Brickell Ave.
Suite 1005
Miami, FL 33131

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Mr. Vargas:

     The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to Empirex Capital LLC ("Empirex"), in connection with the above-referenced investigation.

     The enclosed subpoena requires Empirex to produce documents to the SEC by May 4, 2021. Please deliver the materials by May 4, 2021 at 5:00 p.m. to:

     ENF-CPU
     U.S. Securities and Exchange Commission
     6315 Bren Mar Drive, Suite 175
     Alexandria, VA 22312

     For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

     Please also provide a duplicate copy of any document production cover letters to me at springers@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

     Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if Empirex

prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

When producing the records, please consecutively number and mark each document produced with a symbol that identifies it as being produced by Empirex.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe Empirex has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of Empirex complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by Empirex in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that Empirex provides to the Commission and has other important information.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not

mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

/s *Shelly-Ann A. Springer-Charles*

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement

Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662
                Business Records Certification

3



## SUBPOENA

# UNITED STATES OF AMERICA
# SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**  Empirex Capital LLC
c/o Rafael Vargas, MGR, Registered Agent
848 Brickell Ave.
Suite 1005
Miami, FL 33131

---

☒  **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312, no later than May 4, 2021 at 5:00 p.m.

---

☐  **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

---

By:  /s *Shelly-Ann A. Springer-Charles*          Date:   April 20, 2021

Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR EMPIREX CAPITAL LLC**
<u>In the Matter of Empirex Capital LLC, FL-04274</u>

April 20, 2021

**<u>Definitions</u>**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.     "Empirex Capital LLC" means the entity doing business under the name "Empirex Capital LLC" ("Empirex"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.     "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.     A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.     "Acero" means (i) Roman David Acero Quintero and/or (ii) any present or former representative of Acero.

5.     "Gonzalez" means (i) Martha Gonzalez and/or (ii) any present or former representative of Gonzalez.

6.     "Rojas" means (i) Catherine Rojas and/or (ii) any present or former representative of Rojas.

7.     "Vargas" means (i) Rafael Alberto Vargas Gonzalez, and/or (ii) any present or former representative of Vargas.

8.     "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are

stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

9.   "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

10.  "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

11.  An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

12.  The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

13.  The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

14.  To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
     a.   the word "or" means "and/or";
     b.   the word "and" means "and/or";
     c.   the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
     d.   the masculine gender includes the female gender and the female gender includes the masculine gender; and
     e.   the singular includes the plural and the plural includes the singular.

15.  "Relevant Period" means the time period beginning January 1, 2018, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

16.  "Relevant Entities and Individuals" means each of the following: Acero, Gonzalez, Rojas, Vargas, and any entity or individual Concerning the recruiting of Empirex

investors or the sale of an Empirex investment to investors.

**Instructions**

1.      Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period from January 1, 2018, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

   a.     its author(s);
   b.     its date;
   c.     its subject matter;
   d.     the name of the Person who has the item now, or the last Person known to have it;
   e.     the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f.     the basis upon which you are not producing the responsive Document;
   g.     the specific request in the subpoena to which the Document relates;
   h.     the attorney(s) and the client(s) involved; and
   i.     in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## Documents to be Produced

1.      Documents sufficient to disclose the corporate structure of Empirex, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

2.      Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of Empirex, and Documents sufficient to disclose, for each individual identified in response to this Item:
   a.     title;
   b.     dates of affiliation with Empirex;
   c.     current or last known home address and telephone number;
   d.     current or last known employment address and telephone number; and
   e.     salary or other compensation for each year from January 1, 2018 to the present;

3.     Documents sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held by or on behalf of Empirex from January 1, 2018 to the present, and Documents sufficient to disclose, for each account identified in response to this Item:

   a.   the name, address, and telephone number of the financial institution where the account is held, maintained, directed or controlled;

   b.   the account number;

   c.   the name, address, and telephone number of the branch office, if any, where the account is held, maintained, or directed;

   d.   the account name;

   e.   and the date the account was opened;

4.     For the accounts responsive to Item 3 above, all account information including but not limited to account opening Documents, Communications, monthly account statements, cancelled checks (front and back), wire transfer requests, confirmations, emails, notes and other similar Documents;

5.     Documents sufficient to disclose all other assets held by or on behalf of Empirex;

6.     All draft and final financial reports Concerning Empirex including, but not limited to, audited and unaudited financial statements, including balance sheets and statements of income and retained earnings and cash flows, as well as all ledgers, journals, and workpapers used to prepare and support Empirex's financial statements, balance sheets, copies of filed federal and state corporate income tax returns and 1099/1098/1096 tax returns, w-2s and payroll tax returns, trial balances, cash receipt journals, bank statements, copies of canceled checks, deposit records with copies of deposit items, cash disbursement journals, balance sheets, statements of income and retained earnings, and any other report of receipts, disbursements, net profits and losses, and cash flow;

7.     Documents sufficient to identify all Empirex investors by name, address, and telephone number;

8.     For each investor identified in response to Item 7 above, Documents sufficient to disclose:
   a. the amount invested,
   b. the date(s) of investments, and
   c. whether, when, and how much of each investors' principal has been returned to them;

9.     For each investor identified in response to Item 7 above, all Documents Concerning agreements or contracts between Empirex and the investor and all Documents Concerning terms of investments;

10.    For each investor identified in response to Item 7 above, all periodic or other account statements;

11.   For each investor identified in response to Item 7 above, all Documents Concerning the investment of (or other use of) their funds by Empirex and the current location of investor funds;

12.   All Documents and Communications Concerning all investment, promotional, sales, marketing, or advertising materials offered, sold, advertised, distributed, or otherwise disseminated, directly or indirectly, by Empirex or any of the Relevant Entities and Individuals, including, but not limited to, brochures, offering memoranda and attachments, business and projection plans, subscription agreements, and operating agreements;

13.   Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in Empirex;

14.   All Documents Concerning the payment of fees to any individual or entity in connection with the recruiting of Empirex investors or the sale of an Empirex investment to investors;

15.   All Documents Concerning Agreements, contracts, loans, notes, or understandings between Empirex and the Relevant Entities and Individuals;

16.   All Documents Concerning Communications between Empirex and investors or potential investors in Empirex;

17.   All Documents Concerning funds received by Empirex from the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such receipts;

18.   All Documents Concerning funds disbursed by Empirex to the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such disbursements;

19.   All Documents Concerning all Communications between Empirex and the Relevant Entities and Individuals during the Relevant Period Concerning:
      a.   Empirex;
      b.   Acero;
      c.   Gonzalez;
      d.   Rojas;
      e.   Vargas;
      f.   all funds received by the Relevant Entities and Individuals directly or indirectly from Empirex;
      g.   all funds disbursed by the Relevant Entities and Individuals directly or indirectly to Empirex;

6

      h.  all funds received or disbursed by Empirex;

      i.   all Agreements, contracts, loans, notes, or understandings between Empirex and the Relevant Entities and Individuals;

      j.   all Agreements, contracts, loans, notes, or understandings among or between the Relevant Entities and Individuals Concerning Empirex; and;

20.    To the extent not provided in response to other Items, all Documents Concerning the following:

      a.  All Empirex accounts held at Bank of America, N.A., JPMorgan Chase Bank, N.A., and Coinbase Inc. from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;

      b.  All other Empirex accounts held at all other domestic or foreign banks, brokerages, or other financial institutions from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;

      c.  The Relevant Entities and Individuals; and

      d.  All Empirex Investors.

### DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
### OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by Empirex Capital LLC as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

   (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

   (b) kept in the course of regularly conducted business activity; and

   (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].

_____
[*Name*]



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions ........................................................................................................................ 1

Delivery Formats ............................................................................................................................. 2

   I.  Imaged Productions ................................................................................................................ 3

       1.  Images ......................................................................................................................... 3

       2.  Image Cross-Reference File ........................................................................................ 3

       3.  Data File ..................................................................................................................... 3

       4.  Text ............................................................................................................................. 3

       5.  Linked Native Files ................................................................................................... 3

  II.  Native File Productions without Load Files ........................................................................ 4

 III.  Adobe PDF File Productions ............................................................................................... 4

 IV.  Audio Files........................................................................................................................... 4

  V.  Video Files ........................................................................................................................... 4

 VI.  Electronic Trade and Bank Records .................................................................................... 4

VII.  Electronic Phone Records .................................................................................................... 4

VIII.  Audit Workpapers ................................................................................................................ 5

 IX.  Mobile Device Data ............................................................................................................. 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all physical productions sent to the SEC is:
**ENF-CPU, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  *(Note:  An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

2

U.S. Securities and Exchange Commission
Data Delivery Standards

---

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

## Delivery Formats

**I.  Imaged Productions**
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.  Images**
a. Black and white images must be 300 DPI Group IV single-page TIFF files
b. Color images must be produced in JPEG format
c. File names cannot contain embedded spaces or special characters (including the comma)
d. Folder names cannot contain embedded spaces or special characters (including the comma)
e. All image files must have a unique i.e. Bates number
f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image
g. The number of image files per folder should not exceed 2,000 files
h. Excel spreadsheets should have a placeholder image named by the Bates number of the file
i. AUTOCAD/photograph files should be produced as a single page JPEG file

**2.  Image Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.  Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the database.
a. The first line of the .DAT file must be a header row identifying the field names
b. The .DAT file must use the following *Concordance®* default delimiters:
  Comma ¶ ASCII character (020)
  Quote þ ASCII character (254)
c. If the .DAT file is produced in Unicode format it must contain the byte order marker
d. Date fields should be provided in the format: mm/dd/yyyy
e. Date and time fields must be two separate fields
f. The time zone must be included in all time fields
g. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
h. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
i. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
j. BEGATTACH and ENDATTACH fields must be two separate fields
k. A complete list of metadata fields is available in **Addendum A** to this document

**4.  Text**
Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.  Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.

3

    a.   Native file documents must be named per the FIRSTBATES number

    b.   The full path of the native file must be provided in the .DAT file for the LINK field

    c.   The number of native files per folder should not exceed 2,000 files

**II. Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III. Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV. Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

**V. Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI. Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII. Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

Rev 12/2020

| | | |
|---|---|---|
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

Rev 12/2020

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 12/2020

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

SEC 1662 (08-16)

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1.  To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2.  To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3.  To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4.  By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5.  In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# **ATTACHMENT  D**



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

DIVISION OF ENFORCEMENT

Shelly-Ann A. Springer-Charles
Senior Counsel
(305) 416-6224
springers@sec.gov

April 20, 2021

VIA OVERNIGHT DELIVERY
Rafael Vargas
1451 Brickell Ave.
Unit 4203
Miami, FL 33131

Re: In the Matter of Empirex Capital LLC, FL-04274

Dear Mr. Vargas:

The staff of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to provide us with documents.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to provide us the documents described in the attachment to the subpoena. You must provide these documents by May 4, 2021. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain. All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment. In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form. Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards"). If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents. **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.** The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards. Alternatively, you may send us photocopies of the documents in paper format. **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.** The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state to which numbered paragraph(s) in the subpoena attachment each item responds. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to <u>ENF-CPU@sec.gov</u>, or in a separate cover

letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. Correspondence should reference case number, case name and requesting SEC staff member.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send all the materials described in it. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
- the reason you did not produce the item; and
- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved. If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
6315 Bren Mar Drive, Suite 175
Alexandria, VA 22312

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to Shelly-Ann A. Springer-Charles at springers@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

**<u>Other Important Information</u>**

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. If you are represented by a lawyer when you testify, your lawyer may advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission. This form also has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (305) 416-6224.  If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

/s *Shelly-Ann A. Springer-Charles*

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement

Enclosures:          Subpoena and Attachment
                     SEC Data Delivery Standards
                     SEC Form 1662

5



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**   Rafael Vargas
1451 Brickell Ave.
Unit 4203
Miami, FL 33131

---

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312, no later than May 4, 2021 at 5:00 p.m.

---

☐ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   /s *Shelly-Ann A. Springer-Charles*          Date:   April 20, 2021
Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

---

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR RAFAEL VARGAS**
<u>In the Matter of Empirex Capital LLC, FL-04274</u>

April 20, 2021

**<u>Definitions</u>**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.   "Empirex Capital LLC" means the entity doing business under the name "Empirex Capital LLC" ("Empirex"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.   "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.   A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.   "Acero" means (i) Roman David Acero Quintero and/or (ii) any present or former representative of Acero.

5.   "Gonzalez" means (i) Martha Gonzalez and/or (ii) any present or former representative of Gonzalez.

6.   "Rojas" means (i) Catherine Rojas and/or (ii) any present or former representative of Rojas.

7.   "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

8.      "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

9.      "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

10.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

11.     The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

12.     The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

13.     To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
        a.      the word "or" means "and/or";
        b.      the word "and" means "and/or";
        c.      the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
        d.      the masculine gender includes the female gender and the female gender includes the masculine gender; and
        e.      the singular includes the plural and the plural includes the singular.

14.     "Relevant Period" means the time period beginning January 1, 2018, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

15.     "Relevant Entities and Individuals" means each of the following: Empirex, Acero, Gonzalez, Rojas, and any entity or individual Concerning the recruiting of Empirex investors or the sale of an Empirex investment to investors.

**Instructions**

1.      Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period from January 1, 2018, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with

this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

    a.      its author(s);
    b.      its date;
    c.      its subject matter;
    d.      the name of the Person who has the item now, or the last Person known to have it;
    e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.      the basis upon which you are not producing the responsive Document;
    g.      the specific request in the subpoena to which the Document relates;
    h.      the attorney(s) and the client(s) involved; and
    i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## **Documents to be Produced**

1.      Documents sufficient to disclose all of your employers from January 1, 2018 through present, as well as your title(s), dates of affiliation with each employer, and salary or other compensation;

2.      Documents sufficient to identify the nature of your relationship with the Relevant Entities and Individuals and all salary or other compensation you have received from the Relevant Entities and Individuals from January 1, 2018 through present;

3.      All Documents Concerning Agreements, contracts, loans, notes, or understandings between you and Empirex and the Relevant Entities and Individuals;

4.      For each year from January 1, 2018 through present, Document sufficient to disclose your annual income and all sources of income;

5.      Documents sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held in your name or for your benefit, or over which you have any control, or by or on behalf of Empirex and Documents sufficient to disclose, for each account identified in response to this Item:

      a.   the name, address, and telephone number of the financial institution where the account is held, maintained, directed or controlled;

      b.   the account number;

      c.   the name, address, and telephone number of the branch office, if any, where the account is held, maintained, or directed;

      d.   the account name; and,

      e.   the date the account was opened;

6.     For the accounts responsive to Item 5 above, all account information including but not limited to account opening Documents, Communications, monthly account statements, cancelled checks (front and back), wire transfer requests, confirmations, emails, notes and other similar Documents;

7.     Documents sufficient to disclose all of your other assets over $1,000 in value, including the current location of all such assets;

8.     Documents sufficient to disclose all other assets held by or on behalf of Empirex;

9.     For each tax year 2018 through present, copies of all your filed federal and state income tax returns;

10.    Documents sufficient to disclose the corporate structure of Empirex including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

11.    Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of Empirex and Documents sufficient to disclose, for each individual identified in response to this Item:

      a.   title;

      b.   dates of affiliation with Empirex;

      c.   current or last known home address and telephone number;

      d.   current or last known employment address and telephone number; and,

      e.   salary or other compensation for each year from January 1, 2018 through present;

12.    Documents sufficient to identify all individuals and entities for whom Empirex performs or has performed services of any kind and the nature of the services performed;

13.    All draft and final financial reports Concerning Empirex including, but not limited to, audited and unaudited financial statements, including balance sheets and statements of income and retained earnings and cash flows, as well as all ledgers, journals, and workpapers used to prepare and support Empirex's financial statements, copies of filed federal and state corporate income tax returns and 1099/1098/1096 tax returns, w-2s and payroll tax returns, trial balances, cash receipt journals, bank statements, copies of canceled checks, deposit records with copies of deposit items, cash disbursement

journals, balance sheets, statements of income and retained earnings and cash flows, any other report of receipts, disbursements, net profits and losses, and cash flow, and any other financial reports and other information Concerning the financial condition, business and operations of Empirex;

14.     Documents sufficient to identify all Empirex investors by name, address, and telephone number;

15.     For each investor identified in response to Item 14 above, Documents sufficient to disclose

      a.   the amount invested;
      b.   the date(s) of investments; and,
      c.   whether, when, and how much of each investors' principal has been returned to them;

16.     For each investor identified in response to Item 14 above, all Documents Concerning Agreements, contracts, loans, notes, or understandings between you or Empirex and the investor and all Documents that reflect terms of investments;

17.     For each investor identified in response to Item 14 above, all periodic or other account statements;

18.     For each investor identified in response to Item 14 above, all Documents Concerning the investment of (or other use of) their funds by you or Empirex and the current location of investor funds;

19.     All Documents and Communications Concerning all investment, promotional, sales, marketing, or advertising materials offered, sold, advertised, distributed, or otherwise disseminated, directly or indirectly, by you or any of the Relevant Entities and Individuals, including, but not limited to, brochures, offering memoranda and attachments, business and projection plans, subscription agreements, and operating agreements;

20.     All Documents Concerning your or Empirex's drafting, review of and comments made on all draft and final Empirex offering and marketing materials provided to prospective and actual Empirex investors;

21.     Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in Empirex;

22.     All Documents Concerning funds received by you or Empirex from the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such receipts;

23.     All Documents Concerning funds disbursed by you or Empirex to the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such disbursements;

24.     All Documents Concerning the payment of fees to any individual or entity in connection with the recruiting of Empirex investors or the sale of an Empirex investment to investors;

25.     All Documents Concerning Communications between you or Empirex and investors or potential investors in Empirex;

26.     All Documents Concerning all Communications between you and the Relevant Entities and Individuals Concerning:

   a.  Empirex;
   b.  Acero;
   c.  Gonzalez;
   d.  Rojas;
   e.  all funds received by the Relevant Entities and Individuals directly or indirectly from you or Empirex;
   f.  all funds disbursed by the Relevant Entities and Individuals directly or indirectly to you or Empirex;
   g.  all funds received or disbursed by you or Empirex;
   h.  all Agreements, contracts, loans, notes, or understandings between you and the Relevant Entities and Individuals;
   i.  all Agreements, contracts, loans, notes, or understandings among or between the Relevant Entities and Individuals Concerning Empirex; and,

27.     To the extent not provided in response to other Items, all Documents Concerning the following:

   a.  Empirex;
   b.  All your or Empirex accounts held at Bank of America, N.A., JPMorgan Chase Bank, N.A., and Coinbase Inc. from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;
   c.  All your or Empirex accounts held at all other domestic or foreign banks, brokerages, or other financial institutions not identified in response to any other Item from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;
   d.  the Relevant Entities and Individuals; and,
   e.  All Empirex investors.



**U.S. Securities and Exchange Commission**

**<u>Data Delivery Standards</u>**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>***

General Instructions ................................................................................................................................ 1

Delivery Formats ..................................................................................................................................... 2

   I.  Imaged Productions.......................................................................................................................3

      1.  Images ................................................................................................................................. 3

      2.  Image Cross-Reference File ............................................................................................... 3

      3.  Data File ............................................................................................................................. 3

      4.  Text..................................................................................................................................... 3

      5.  Linked Native Files ............................................................................................................ 3

   II.  Native File Productions without Load Files ................................................................................ 4

   III.  Adobe PDF File Productions ...................................................................................................... 4

   IV.  Audio Files.................................................................................................................................. 4

   V.  Video Files ................................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ........................................................................................... 4

   VII.  Electronic Phone Records ......................................................................................................... 4

   VIII.  Audit Workpapers .................................................................................................................... 5

   IX.  Mobile Device Data .................................................................................................................. 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1.  A cover letter must be included with each production and should include the following information:
    a.  Case number, case name and requesting SEC staff member name
    b.  A list of each piece of media included in the production with its unique production volume number
    c.  A list of custodians, identifying the Bates range for each custodian
    d.  The time zone in which the emails were standardized during conversion
    e.  Whether the production contains native files produced from Mac operating system environments
2.  Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a.  Case number
    b.  Production date
    c.  Producing party
    d.  Bates range (if applicable)
3.  All submissions must be organized by **custodian** unless otherwise instructed.
4.  All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5.  All load-ready collections should include only one data load file and one image pointer file.
6.  All load-ready text must be produced as separate document-level text files.
7.  All load-ready collections should account for custodians in the custodian field.
8.  All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9.  Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

U.S. Securities and Exchange Commission
Data Delivery Standards

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

## Delivery Formats

**I.   Imaged Productions**
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.   Images**
a.   Black and white images must be 300 DPI Group IV single-page TIFF files
b.   Color images must be produced in JPEG format
c.   File names cannot contain embedded spaces or special characters (including the comma)
d.   Folder names cannot contain embedded spaces or special characters (including the comma)
e.   All image files must have a unique file name, i.e. Bates number
f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
g.   The number of image files per folder should not exceed 2,000 files
h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the database.
a.   The first line of the .DAT file must be a header row identifying the field names
b.   The .DAT file must use the following *Concordance®* default delimiters:
Comma ¶ ASCII character (020)
Quote þ ASCII character (254)
c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
d.   Date fields should be provided in the format: mm/dd/yyyy
e.   Date and time fields must be two separate fields
f.   The time zone must be included in all time fields
g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
j.   BEGATTACH and ENDATTACH fields must be two separate fields
k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**
Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.

3

U.S. Securities and Exchange Commission
Data Delivery Standards

    a.   Native file documents must be named per the FIRSTBATES number
    b.   The full path of the native file must be provided in the .DAT file for the LINK field
    c.   The number of native files per folder should not exceed 2,000 files

U.S. Securities and Exchange Commission
Data Delivery Standards

**II.   Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:           Caller's name or account/identification number
2) Originating Number:    Caller's phone number
3) Called Party Name:     Called party's name
4) Terminating Number:    Called party's phone number
5) Date:                  Date of call
6) Time:                  Time of call
7) Filename:              Filename of audio file

**V.   Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

Rev 12/2020

| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
|---|---|---|
| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

Rev 12/2020

| | | |
|---|---|---|
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

# **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's direction.

2. *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.  *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.  *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5.  In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# **ATTACHMENT  E**

| | |
|---|---|
| **From:** | Perez, Carmen |
| **To:** | efast@theblanchlawfirm.com |
| **Cc:** | Springer, Shelly-Ann |
| **Subject:** | smail FL-04274 Subpoena |
| **Date:** | Wednesday, January 19, 2022 2:54:28 PM |
| **Attachments:** | image001.png |
| | Rafael Vargas-1-19-2022.pdf |

Ms. Fast,

Please see attached.

Regards,

Carmen R. Perez
Senior Paralegal Specialist
United States Securities and Exchange Commission
Miami Regional Office, Division of Enforcement
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
P: 305.982.6350
F: 703.813-.9558
   Email: perezc@sec.gov
   Website: https://www.sec.gov/regional-office/miami



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Shelly-Ann A. Springer-Charles
Senior Counsel
(305) 416-6224
springers@sec.gov

January 19, 2022

EMAIL AND OVERNIGHT DELIVERY
Rafael Vargas
c/o Elena Fast, Esq.
The Blanch Law Firm, P.C.
261 Madison Avenue, 12th Floor
New York, NY 10016
efast@theblanchlawfirm.com

Re: In the Matter of Empirex Capital LLC, FL-04274

Dear Ms. Fast:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for testimony issued to your client, Rafael Vargas, in connection with the above-referenced investigation.

The subpoena requires your client, Rafael Vargas, to appear for testimony conducted by audio-visual teleconference means, using the WebEx Internet platform, Wednesday, March 16, 2022 at 9:00 a.m. EDT.  I will send you and your client a WebEx invitation directed to your email addresses, to enable you to access the testimony session.

A background questionnaire is also enclosed. During your client's testimony, the staff intends to ask background questions concerning, among other things, your client's residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that your client complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your client's testimony.

 Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that your client provides to the Commission and has other important information for your client. Please provide a copy of this form to your client.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement
(305) 416-6224
springers@sec.gov

Enclosures:        Subpoena
                   SEC Form 1662
                   Background Questionnaire

2



## SUBPOENA

# UNITED STATES OF AMERICA
# SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**   Rafael Vargas
c/o Elena Fast, Esq.
The Blanch Law Firm, P.C.
261 Madison Avenue, 12th Floor
New York, NY 10016
efast@theblanchlawfirm.com

☐   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

☒   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**Wednesday, March 16, 2022 at 9:00a.m. EDT**, by audio-visual teleconference means, using the WebEx Internet platform.  You are to access the testimony session through a WebEx invite, which will be sent from Shelly-Ann A. Springer-Charles, Senior Counsel, to you and your counsel.

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   _____          Date:   January 19, 2022
Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## BACKGROUND QUESTIONNAIRE

**Please respond to the following questions. Answering these questions will reduce the amount of time spent on background information when you testify. You may use the space provided, attaching additional sheets as necessary, or supply the information in a separate document. If you would like an electronic version of this document, please contact us and we will provide you with one.**

Today's date: _____

1.   What is your full name?

2.   Have you ever been known by any other name? Yes _____   No _____
     If yes, list each such name and the period(s) in which you were known by that name.

3.   Date and place of birth?

4.   Country of citizenship?

5.   Marital Status?  Married ____   Divorced ____   Single ____

6.   List the names, ages, and occupations of your children, if any.

7.   List all residences you occupied at any time during the last three years, including vacation homes, beginning with your current residence.  For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

Background Questionnaire
Page 2

ELECTRONIC COMMUNICATIONS ACCOUNTS

8.  List all telephone numbers and telecommunication services that were in your name or that you regularly used between January 1, 2018 and the present. Include all residential business, cellular, credit card, and VOIP numbers, and services such as Google Voice, Skype, and video conference services. For each telephone number, state the name of the corresponding carrier (e.g., AT&T, Verizon, Vonage, Skype, etc.).

9.  List the universal resource locator (URL) for all websites or blogs that you established or for which you had the authority to control content at any time between January 1, 2018 and the present. For each website, state the name(s) of the domain name registrar (e.g. GoDaddy) through which the URL was obtained, the name(s) of all individuals or entities who provided web site hosting or design services, whether the website contained primarily business or personal information, and the time period in which it was active.

10. List all electronic mail addresses and social networking accounts (e.g.Facebook, LinkedIn, Twitter, Instagram, Flickr, Google+) that were in your name or that you regularly used at any time between January 1, 2018 and the present. Include all personal, business, or shared electronic mail addresses and social networking accounts. For each electronic mail address and social networking account, state the name(s) of the corresponding internet service provider(s) (e.g. Google, Yahoo, AOL, or your employer), whether the address was used primarily for business or personal correspondence, and the time period in which it was active.

Background Questionnaire
Page 3

11. List all usernames for instant messaging and similar electronic communications services (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in response to questions above, that were in your name or that you regularly used at any time between January 1, 2018 and the present. Include all personal, business, and shared addresses. For each username, state the name(s) of the communication service provider (e.g. Google, AOL, etc.), whether the address was used primarily for business or personal correspondence, the time period in which it was active, and the name of the software application(s) (e.g. GTalk, ICQ, MSN Messenger) you used to access it.

12. List all internet message boards and discussion forums (including, but not limited to, Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a member or on which you posted messages at any time between January 1, 2018 and the present. For each message board or discussion forum, state the service provider and your member name or identification information.

PUBLICLY-HELD COMPANIES

13. Are you now, or have you ever been, an officer or director of any publicly-held company? Yes ____ No ____.

14. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company?  Yes ____  No ____.

Background Questionnaire
Page 4

<u>PRIVATELY-HELD COMPANIES</u>

15. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any privately-held company (i.e., corporation, partnership, limited liability company or other corporate form)?

16. Are you now, or have you ever been, a manager or a member of any privately-held company (i.e., corporation, partnership, limited liability company or other corporate form)?

<u>SECURITIES ACCOUNTS</u>

17. List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time between January 1, 2018 and the present.  Include all foreign accounts. For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (i.e., cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

18. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to the previous question, in which you had any direct or indirect beneficial interest at any time  between January 1, 2018 and the present.  For each such account, provide the information requested by the previous question.

Background Questionnaire
Page 5

19. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answers to the two previous questions, over which you had any control at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the first question in this section.

BANK ACCOUNTS

20. List all accounts you have held in your name at any financial institution (i.e., bank, thrift, or credit union) at any time between January 1, 2018 and the present.  Include all foreign accounts.  For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (i.e., checking, savings, money market or IRA); (iv) the account number; and (v) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

21. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to the previous question, in which you had any direct or indirect beneficial interest at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the previous question.

22. List all accounts at financial institutions (including foreign accounts), other than those listed in your answers to the two previous questions, over which you had any control at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the first question in this section.

Background Questionnaire
Page 6

23. List any other accounts (including foreign accounts), other than those listed in your answers to the previous questions in this section, that were held in your name, in which you had any direct or indirect beneficial interest, or over which you had any control, that you have used to transfer funds between January 1, 2018 and the present, including, but not limited to, PayPal accounts.  For each such account, provide the information requested by the first question in this section.

PRIOR PROCEEDINGS

24. Have you ever testified in any proceeding conducted by the staff of the Securities and Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any other self-regulatory organization ("SRO"), or in any arbitration proceeding related to securities transactions?

25. Have you ever been deposed in connection with any court proceeding? Yes ____ No ____.

26.  Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes ____ No ____.

Background Questionnaire
Page 7

27. Have you ever been a defendant in any action (other than those listed in response to the previous question) alleging violations of the federal securities laws? Yes ____ No ____.

28. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes ____  No ____.

EDUCATIONAL HISTORY

29. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

30. Other than courses taken in connection with institutions listed in response to question 29, list any securities, accounting or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

PROFESSIONAL LICENSES/CLUBS

31. Do you hold, or have you ever held, any professional license? Yes ____ No ____.

32. Are you, or have you ever been, a member of any professional or business club or organization?  Yes ____ No ____.

Background Questionnaire
Page 8

33. Are you, or have you been between January 1, 2018 and the present, a member of any social clubs, charities or nonprofit organizations?   Yes _____ No _____.

<u>EMPLOYMENT HISTORY</u>

34. Are you, or have you ever been, an employee of a broker, dealer, investment adviser, investment company, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization?   Yes _____ No _____.

35. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae. For each position you have held (including multiple positions or titles with the same employer), provide the following information:

CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E.  Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F.  Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G.  Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H.  Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# **ATTACHMENT  F**

| | |
|---|---|
| **From:** | Perez, Carmen |
| **To:** | "dweinstein@joneswalker.com" |
| **Cc:** | Springer, Shelly-Ann |
| **Subject:** | SMAIL In the Matter of Empirex Capital LLC, FL-04274 |
| **Date:** | Thursday, June 16, 2022 11:23:27 AM |
| **Attachments:** | image001.png |
| | Empirex Capital LLC-6-16-2022.pdf |
| | Rafael Vargas 6-16-2022.pdf |

Attached please find a courtesy copy of subpoenas directed to Empirex Capital LLC and Rafael Vargas dated June 16, 2022 for your reference in the above-captioned matter.

Best Regards,

**Carmen R. Perez**
Senior Paralegal Specialist
United States Securities and Exchange Commission
Miami Regional Office, Division of Enforcement
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
P: 305.982.6350
F: 703.813-.9558

Email: perezc@sec.gov
Website: https://www.sec.gov/regional-office/miami

This electronic communication, including any attachments, is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, nonpublic and confidential. Erroneous delivery of this message to an unintended recipient should not be construed as a waiver of any privilege that may otherwise attach to the information contained herein. If you have received this communication in error, please notify the sender by return email, and delete or otherwise remove this communication and any copies permanently from your operating system. Any unauthorized disclosure, use, distribution, or reproduction of this message is prohibited and may be unlawful.

Note that emails sent to or from this email address are subject to retention and archiving by the United States Securities and Exchange Commission.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

June 16, 2022

<u>VIA EMAIL & OVERNIGHT DELIVERY</u>
Empirex Capital LLC
c/o David S. Weinstein, Esq.
Jones Walker LLP
201 S Biscayne Blvd, Ste. 3000
Miami, FL 33131
dweinstein@joneswalker.com

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Mr. Weinstein:

　　The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to your client, Empirex Capital LLC ("Empirex"), in connection with the above-referenced investigation.

　　The enclosed subpoena requires your client to produce documents to the SEC by June 30, 2022. Please deliver the materials by June 30, 2022 at 5:00 p.m. to:

　　ENF-CPU
　　U.S. Securities and Exchange Commission
　　14420 Albemarle Point Place, Suite 102
　　Chantilly, VA 20151-1750

　　For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

　　Please also provide a duplicate copy of any document production cover letters to me at springers@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

When producing the records, please consecutively number and mark each document produced with a symbol that identifies it as being produced by Empirex.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe your client has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of Empirex complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by Empirex in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that Empirex provides to the Commission and has other important information. Please provide a copy of this form to your client.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement
(305) 416-6224
springers@sec.gov

Enclosures:      Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662
                Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**   Empirex Capital LLC
c/o David S. Weinstein, Esq.
Jones Walker LLP
201 S Biscayne Blvd, Ste. 3000
Miami, FL 33131
dweinstein@joneswalker.com

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than June 30, 2022 at 5:00 p.m.

---

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   _____          Date:   June 16, 2022
Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

---

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR EMPIREX CAPITAL LLC**
In the Matter of Empirex Capital LLC, FL-04274

June 16, 2022

**Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.      "Empirex Capital LLC" means the entity doing business under the name "Empirex Capital LLC" ("Empirex"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.      "Acer Media Services, LLC" means the entity doing business under the name "Acer Media Services, LLC" ("Acer"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.      "AKC Management LLC" means the entity doing business under the name "AKC Management LLC" ("AKC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

4.      "Cryptox Hub LLC" means the entity doing business under the name "Cryptox Hub LLC" ("Cryptox Hub"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5.      "Cryptox Payroll Company LLC" means the entity doing business under the name "Cryptox Payroll Company LLC" ("Cryptox Payroll"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

6.      "Infinitech Trading Software Solutions LLC" means the entity doing business under the name "Infinitech Trading Software Solutions LLC" ("Infinitech"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

7.      "Intellect Management Services LLC" means the entity doing business under the name

"Intellect Management Services LLC" ("Intellect"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

8.      "JH Brickell Management LLC" means the entity doing business under the name "JH Brickell Management LLC" ("JH Brickell"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

9.      "JXVM Consulting LLC" means the entity doing business under the name "JXVM Consulting LLC" ("JXVM"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

10.     "KYC Payment Company LLC" means the entity doing business under the name "KYC Payment Company LLC" ("KYC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

11.     "Metaverse Realty Title Company LLC" means the entity doing business under the name "Metaverse Realty Title Company LLC" ("Metaverse"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

12.     "NKC Management LLC" means the entity doing business under the name "NKC Management LLC" ("NKC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

13.     "Zeus X1 LLC" means the entity doing business under the name "Zeus X1 LLC" ("Zeus"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

14.     "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

15.     A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on

behalf of the Person.

16.     "Acero" means (i) Roman David Acero Quintero and/or (ii) any present or former representative of Acero.

17.     "E. Valencia" means (i) Eduardo Valencia and/or (ii) any present or former representative of E. Valencia.

18.     "Gonzalez" means (i) Martha Gonzalez and/or (ii) any present or former representative of Gonzalez.

19.     "J. Valencia" means (i) Juan Jose Valencia Vargas and/or (ii) any present or former representative of J. Valencia.

20.     "P. Vargas" means (i) Paola Andrea Vargas Gonzalez, and/or (ii) any present or former representative of P. Vargas.

21.     "R. Vargas" means (i) Rafael Alberto Vargas Gonzalez, and/or (ii) any present or former representative of R. Vargas.

22.     "Reyes" means (i) Samuel Reyes, and/or (ii) any present or former representative of Reyes.

23.     "Rojas" means (i) Catherine Rojas and/or (ii) any present or former representative of Rojas.

24.     "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

25.     "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

3

26.     "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

27.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

28.     The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

29.     The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

30.     To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
   a.     the word "or" means "and/or";
   b.     the word "and" means "and/or";
   c.     the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
   d.     the masculine gender includes the female gender and the female gender includes the masculine gender; and
   e.     the singular includes the plural and the plural includes the singular.

31.     "Relevant Period" means the time period beginning **April 20, 2021**, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

32.     "Relevant Entities and Individuals" means each of the following: Acer, AKC, Cryptox Hub, Cryptox Payroll, Infinitech, Intellect, JH Brickell, JXVM, KYC, Metaverse, NKC, Zeus, Acero, E. Valencia, Gonzalez, J. Valencia, P. Vargas, R. Vargas, Reyes, and Rojas and any entity or individual Concerning the recruiting of Empirex investors or the sale of an Empirex investment to investors.

## Instructions

1.     Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in

accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period from April 20, 2021, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of

which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:
    a.      its author(s);
    b.      its date;
    c.      its subject matter;
    d.      the name of the Person who has the item now, or the last Person known to have it;
    e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.      the basis upon which you are not producing the responsive Document;
    g.      the specific request in the subpoena to which the Document relates;
    h.      the attorney(s) and the client(s) involved; and
    i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

### Documents to be Produced

**To the extent not previously produced in response to a subpoena in this matter, produce all Documents identified below**:

1.      Documents sufficient to disclose the corporate structure of Empirex, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

2.      Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of Empirex, and Documents sufficient to disclose, for each individual identified in response to this Item:
    a.  title;
    b.  dates of affiliation with Empirex;
    c.  current or last known home address and telephone number;
    d.  current or last known employment address and telephone number; and
    e.  salary or other compensation for each year from April 20, 2021 to the present;

3.      Documents sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held by or on behalf of Empirex from April 20, 2021 to the present, and Documents sufficient to disclose, for each account identified in response to this Item:

    a.   the name, address, and telephone number of the financial institution where the account is held, maintained, directed or controlled;

    b.   the account number;

    c.   the name, address, and telephone number of the branch office, if any, where the account is held, maintained, or directed;

    d.   the account name;

    e.   and the date the account was opened;

4.     For the accounts responsive to Item 3 above, all account information including but not limited to account opening Documents, Communications, monthly account statements, cancelled checks (front and back), wire transfer requests, confirmations, emails, notes and other similar Documents;

5.     Documents sufficient to disclose all other assets held by or on behalf of Empirex;

6.     All draft and final financial reports Concerning Empirex including, but not limited to, audited and unaudited financial statements, including balance sheets and statements of income and retained earnings and cash flows, as well as all ledgers, journals, and workpapers used to prepare and support Empirex's financial statements, balance sheets, copies of filed federal and state corporate income tax returns and 1099/1098/1096 tax returns, w-2s and payroll tax returns, trial balances, cash receipt journals, bank statements, copies of canceled checks, deposit records with copies of deposit items, cash disbursement journals, balance sheets, statements of income and retained earnings, and any other report of receipts, disbursements, net profits and losses, and cash flow;

7.     All QuickBooks files Concerning Empirex;

8.     Documents sufficient to identify all Empirex investors by name, address, and telephone number;

9.     For each investor identified in response to Item 8 above, Documents sufficient to disclose:
a. the amount invested,
b. the date(s) of investments, and
c. whether, when, and how much of each investors' principal has been returned to them;

10.    For each investor identified in response to Item 8 above, all Documents Concerning agreements or contracts between Empirex and the investor and all Documents Concerning terms of investments;

12.    For each investor identified in response to Item 8 above, all periodic or other account statements;

12.    For each investor identified in response to Item 8 above, all Documents Concerning the investment of (or other use of) their funds by Empirex and the current location of investor funds;

13.    All Documents and Communications Concerning all investment, promotional, sales, marketing, or advertising materials offered, sold, advertised, distributed, or otherwise disseminated, directly or indirectly, by Empirex or any of the Relevant Entities and Individuals, including, but not limited to, brochures, offering memoranda and attachments, business and projection plans, subscription agreements, and operating agreements;

14.    Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in Empirex;

15.    All Documents Concerning the payment of fees to any individual or entity in connection with the recruiting of Empirex investors or the sale of an Empirex investment to investors;

16.    All Documents Concerning Agreements, contracts, loans, notes, or understandings between Empirex and the Relevant Entities and Individuals;

17.    All Documents Concerning Communications between Empirex and investors or potential investors in Empirex;

18.    All Documents Concerning funds received by Empirex from the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such receipts;

19.    All Documents Concerning funds disbursed by Empirex to the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such disbursements;

20.    All Documents Concerning all Communications between Empirex and the Relevant Entities and Individuals during the Relevant Period Concerning:
   a.   Empirex;
   b.   all the Relevant Entities and Individuals;
   c.   all funds received by the Relevant Entities and Individuals directly or indirectly from Empirex;
   d.   all funds disbursed by the Relevant Entities and Individuals directly or indirectly to Empirex;
   e.   all funds received or disbursed by Empirex;
   f.   all Agreements, contracts, loans, notes, or understandings between Empirex and the Relevant Entities and Individuals;
   g.   all Agreements, contracts, loans, notes, or understandings among or between the Relevant Entities and Individuals Concerning Empirex;

21.   To the extent not provided in response to other Items, all Documents Concerning the following:

   a.   All Empirex accounts held at Amerant Bank, N.A., Bank of America, N.A., BlueVine, Capital One, N.A., Citibank, N.A., Coastal Community Bank, N.A., JPMorgan Chase Bank, N.A., Santander Bank, N.A., Signature Bank, TD Bank, N.A., Truist Bank, Wells Fargo Bank, N.A., Binance Holdings Ltd., E*Trade Financial Corporation, Gemini Trust Company LLC, Interactive Brokers LLC, Kucoin.com, Robinhood Securities, LLC, TD Ameritrade, Inc., Tradestation Securities, Inc., Webull Financial LLC, Coinbase Inc., and Payward Ventures, Inc. from April 20, 2021 through the present, including, but not limited to, account opening Documents and periodic or other statements;

   b.   All other Empirex accounts held at all other domestic or foreign banks, brokerages, or other financial institutions from April 20, 2021 through the present, including, but not limited to, account opening Documents and periodic or other statements;

   c.   The Relevant Entities and Individuals; and

   d.   All Empirex Investors; and,

22.   All records responsive to Items 1 to 21 above for the time period **January 1, 2018 to June 16, 2022** to the extent not previously produced in response to the prior subpoena dated April 20, 2021 issued to Empirex in connection with this investigation.

**DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by Empirex Capital LLC as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

    (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

    (b) kept in the course of regularly conducted business activity; and

    (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].

_____
[*Name*]



**U.S. Securities and Exchange Commission**

**<u>Data Delivery Standards</u>**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>****

General Instructions ...................................................................................................................................... 1

Delivery Formats ........................................................................................................................................... 2

   I.  Imaged Productions.............................................................................................................................3

      1.  Images ....................................................................................................................................... 3

      2.  Image Cross-Reference File .................................................................................................... 3

      3.  Data File .................................................................................................................................. 3

      4.  Text............................................................................................................................................ 3

      5.  Linked Native Files ................................................................................................................. 3

   II.  Native File Productions without Load Files ....................................................................................... 4

   III.  Adobe PDF File Productions ............................................................................................................ 4

   IV.  Audio Files........................................................................................................................................ 4

   V.  Video Files ......................................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ................................................................................................. 4

   VII. Electronic Phone Records ................................................................................................................. 4

   VIII. Audit Workpapers .......................................................................................................................... 5

   IX. Mobile Device Data .......................................................................................................................... 5

**General Instructions**

<span style="color:red">Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

U.S. Securities and Exchange Commission
Data Delivery Standards

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.   Imaged Productions**
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.   Images**
a.   Black and white images must be 300 DPI Group IV single-page TIFF files.
b.   Color images must be produced in JPEG format
c.   File names cannot contain embedded spaces or special characters (including the comma)
d.   Folder names cannot contain embedded spaces or special characters (including the comma)
e.   All image files must have a unique file name, i.e. Bates number
f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
g.   The number of image files per folder should not exceed 2,000 files
h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**
The image cross-reference file (LOG or OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the database.
a.   The first line of the .DAT file must be a header row identifying the field names
b.   The .DAT file must use the following *Concordance®* default delimiters:
       Comma ¶ ASCII character (020)
       Quote þ ASCII character (254)
c.   Date fields should be provided in the format: mm/dd/yyyy
d.   Date fields should be provided in the format: mm/dd/yyyy
e.   Date and time fields must be two separate fields
f.   The time zone must be included in all time fields
g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
j.   BEGATTACH and ENDATTACH fields must be two separate fields
k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**
Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.

a.    Native file documents must be named per the FIRSTBATES number

b.    The full path of the native file must be provided in the .DAT file for the LINK field

c.    The number of native files per folder should not exceed 2,000 files

U.S. Securities and Exchange Commission
Data Delivery Standards

## II. Native File Production without Load Files

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

## III. Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:           Caller's name or account/identification number
2) Originating Number:    Caller's phone number
3) Called Party Name:     Called party's name
4) Terminating Number:    Called party's phone number
5) Date:                  Date of call
6) Time:                  Time of call
7) Filename:              Filename of audio file

## V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI. Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII. Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

Rev 8/2021

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

U.S. Securities and Exchange Commission
Data Delivery Standards

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

Rev 8/2021

| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
|---|---|---|
| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.   Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.   Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

June 16, 2022

<u>VIA EMAIL & OVERNIGHT DELIVERY</u>
Rafael Alberto Vargas Gonzalez
c/o David S. Weinstein, Esq.
Jones Walker LLP
201 S Biscayne Blvd, Ste. 3000
Miami, FL 33131
dweinstein@joneswalker.com

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Mr. Weinstein:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to your client, Rafael Alberto Vargas Gonzalez, in connection with the above-referenced investigation.

The enclosed subpoena requires your client to produce documents to the SEC by June 30, 2022. Please deliver the materials by June 30, 2022 at 5:00 p.m. to:

ENF-CPU
U.S. Securities and Exchange Commission
14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to me at springers@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

When producing the records, please consecutively number and mark each document produced with a symbol that identifies it as being produced by Empirex.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe your client has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that your client provides to the Commission and has other important information for your client. Please provide a copy of this form to your client.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement
(305) 416-6224
springers@sec.gov

Enclosures:        Subpoena and Attachment
                   SEC Data Delivery Standards
                   SEC Form 1662



# SUBPOENA

# UNITED STATES OF AMERICA
# SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**   Rafael Alberto Vargas Gonzalez
c/o David S. Weinstein, Esq.
Jones Walker LLP
201 S Biscayne Blvd, Ste. 3000
Miami, FL 33131
dweinstein@joneswalker.com

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than June 30, 2022 at 5:00 p.m.

---

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   _____          Date:   June 16, 2022
Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

---

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR RAFAEL ALBERTO VARGAS GONZALEZ**
In the Matter of Empirex Capital LLC, FL-04274

June 16, 2022

**Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.  "Empirex Capital LLC" means the entity doing business under the name "Empirex Capital LLC" ("Empirex"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.  "Acer Media Services, LLC" means the entity doing business under the name "Acer Media Services, LLC" ("Acer"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.  "AKC Management LLC" means the entity doing business under the name "AKC Management LLC" ("AKC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

4.  "Cryptox Hub LLC" means the entity doing business under the name "Cryptox Hub LLC" ("Cryptox Hub"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5.  "Cryptox Payroll Company LLC" means the entity doing business under the name "Cryptox Payroll Company LLC" ("Cryptox Payroll"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

6.  "Infinitech Trading Software Solutions LLC" means the entity doing business under the name "Infinitech Trading Software Solutions LLC" ("Infinitech"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

7.  "Intellect Management Services LLC" means the entity doing business under the name

"Intellect Management Services LLC" ("Intellect"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

8.      "JH Brickell Management LLC" means the entity doing business under the name "JH Brickell Management LLC" ("JH Brickell"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

9.      "JXVM Consulting LLC" means the entity doing business under the name "JXVM Consulting LLC" ("JXVM"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

10.     "KYC Payment Company LLC" means the entity doing business under the name "KYC Payment Company LLC" ("KYC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

11.     "Metaverse Realty Title Company LLC" means the entity doing business under the name "Metaverse Realty Title Company LLC" ("Metaverse"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

12.     "NKC Management LLC" means the entity doing business under the name "NKC Management LLC" ("NKC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

13.     "Zeus X1 LLC" means the entity doing business under the name "Zeus X1 LLC" ("Zeus"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

14.     "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

15.     A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on

behalf of the Person.

16.  "Acero" means (i) Roman David Acero Quintero and/or (ii) any present or former representative of Acero.

17.  "E. Valencia" means (i) Eduardo Valencia and/or (ii) any present or former representative of E. Valencia.

18.  "Gonzalez" means (i) Martha Gonzalez and/or (ii) any present or former representative of Gonzalez.

19.  "J. Valencia" means (i) Juan Jose Valencia Vargas and/or (ii) any present or former representative of J. Valencia.

20.  "P. Vargas" means (i) Paola Andrea Vargas Gonzalez, and/or (ii) any present or former representative of P. Vargas.

21.  "R. Vargas" means (i) Rafael Alberto Vargas Gonzalez, and/or (ii) any present or former representative of R. Vargas.

22.  "Reyes" means (i) Samuel Reyes, and/or (ii) any present or former representative of Reyes.

23.  "Rojas" means (i) Catherine Rojas and/or (ii) any present or former representative of Rojas.

24.  "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

25.  "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

26.     "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

27.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

28.     The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

29.     The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

30.     To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
a.      the word "or" means "and/or";
b.      the word "and" means "and/or";
c.      the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
d.      the masculine gender includes the female gender and the female gender includes the masculine gender; and
e.      the singular includes the plural and the plural includes the singular.

31.     "Relevant Period" means the time period beginning **April 20, 2021**, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

32.     "Relevant Entities and Individuals" means each of the following: Empirex, Acer, AKC, Cryptox Hub, Cryptox Payroll, Infinitech, Intellect, JH Brickell, JXVM, KYC, Metaverse, NKC, Zeus, Acero, E. Valencia, Gonzalez, J. Valencia, P. Vargas, Reyes, and Rojas and any entity or individual Concerning the recruiting of Empirex investors or the sale of an Empirex investment to investors.

## **Instructions**

1.      Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in

accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.    For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.    Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.    In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.    Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.    Documents should be labeled with sequential numbering (bates-stamped).

7.    You must produce all Documents created during, or Concerning, the period from April 20, 2021, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8.    The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.    You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.   This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the

effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

a.      its author(s);
b.      its date;
c.      its subject matter;
d.      the name of the Person who has the item now, or the last Person known to have it;
e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
f.      the basis upon which you are not producing the responsive Document;
g.      the specific request in the subpoena to which the Document relates;
h.      the attorney(s) and the client(s) involved; and
i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## **Documents to be Produced**

**To the extent not previously produced in response to a subpoena in this matter, produce all Documents identified below**:

1.    Documents sufficient to disclose all of your employers from April 20, 2021 through present, as well as your title(s), dates of affiliation with each employer, and salary or other compensation;

2.    Documents sufficient to identify the nature of your relationship with the Relevant Entities and Individuals and all salary or other compensation you have received from the Relevant Entities and Individuals from April 20, 2021 through present;

3.    All Documents Concerning Agreements, contracts, loans, notes, or understandings between you and Empirex and the Relevant Entities and Individuals;

4.    For each year from April 20, 2021 through present, Document sufficient to disclose your annual income and all sources of income;

5.    Documents sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held in your name or for your benefit, or over which you have any control, or by or on behalf of Empirex and Documents sufficient to disclose, for each account identified in response to this Item:

    a.  the name, address, and telephone number of the financial institution where the account is held, maintained, directed or controlled;

    b.  the account number;

    c.  the name, address, and telephone number of the branch office, if any, where the account is held, maintained, or directed;

    d.  the account name; and,

    e.  the date the account was opened;

6.    For the accounts responsive to Item 5 above, all account information including but not limited to account opening Documents, Communications, monthly account statements, cancelled checks (front and back), wire transfer requests, confirmations, emails, notes and other similar Documents;

7.    Documents sufficient to disclose all of your other assets over $1,000 in value, including the current location of all such assets;

8.    Documents sufficient to disclose all other assets held by or on behalf of Empirex;

9.    For each tax year 2021 through present, copies of all your filed federal and state income tax returns;

10.    Documents sufficient to disclose the corporate structure of Empirex including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

11.    Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of Empirex and Documents sufficient to disclose, for each individual identified in response to this Item:

    a.  title;

    b.  dates of affiliation with Empirex;

    c.  current or last known home address and telephone number;

    d.  current or last known employment address and telephone number; and,

    e.  salary or other compensation for each year from April 20, 2021 through present;

12.    Documents sufficient to identify all individuals and entities for whom Empirex performs or has performed services of any kind and the nature of the services performed;

13.    All draft and final financial reports Concerning Empirex including, but not limited to, audited and unaudited financial statements, including balance sheets and statements of income and retained earnings and cash flows, as well as all ledgers, journals, and workpapers used to prepare and support Empirex's financial statements, copies of filed federal and state corporate income tax returns and 1099/1098/1096 tax returns, w-2s and payroll tax returns, trial balances, cash receipt journals, bank statements, copies of canceled checks, deposit records with copies of deposit items, cash disbursement journals, balance sheets, statements of income and retained earnings and cash flows, any

7

other report of receipts, disbursements, net profits and losses, and cash flow, and any other financial reports and other information Concerning the financial condition, business and operations of Empirex;

14.    All QuickBooks files Concerning Empirex;

15.    Documents sufficient to identify all Empirex investors by name, address, and telephone number;

16.    For each investor identified in response to Item 15 above, Documents sufficient to disclose

        a.  the amount invested;
        b.  the date(s) of investments; and,
        c.  whether, when, and how much of each investors' principal has been returned to them;

17.    For each investor identified in response to Item 15 above, all Documents Concerning Agreements, contracts, loans, notes, or understandings between you or Empirex and the investor and all Documents that reflect terms of investments;

18.    For each investor identified in response to Item 15 above, all periodic or other account statements;

19.    For each investor identified in response to Item 15 above, all Documents Concerning the investment of (or other use of) their funds by you or Empirex and the current location of investor funds;

20.    All Documents and Communications Concerning all investment, promotional, sales, marketing, or advertising materials offered, sold, advertised, distributed, or otherwise disseminated, directly or indirectly, by you or any of the Relevant Entities and Individuals, including, but not limited to, brochures, offering memoranda and attachments, business and projection plans, subscription agreements, and operating agreements;

21.    All Documents Concerning your or Empirex's drafting, review of and comments made on all draft and final Empirex offering and marketing materials provided to prospective and actual Empirex investors;

22.    Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in Empirex;

23.    All Documents Concerning funds received by you or Empirex from the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such receipts;

24.     All Documents Concerning funds disbursed by you or Empirex to the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such disbursements;

25.     All Documents Concerning the payment of fees to any individual or entity in connection with the recruiting of Empirex investors or the sale of an Empirex investment to investors;

26.     All Documents Concerning Communications between you or Empirex and investors or potential investors in Empirex;

27.     All Documents Concerning all Communications between you and the Relevant Entities and Individuals Concerning:

   a.  Empirex;
   b.  all the Relevant Entities and Individuals;
   c.  all funds received by the Relevant Entities and Individuals directly or indirectly from you or Empirex;
   d.  all funds disbursed by the Relevant Entities and Individuals directly or indirectly to you or Empirex;
   e.  all funds received or disbursed by you or Empirex;
   f.  all Agreements, contracts, loans, notes, or understandings between you and the Relevant Entities and Individuals;
   g.  all Agreements, contracts, loans, notes, or understandings among or between the Relevant Entities and Individuals Concerning Empirex; and,

28.     To the extent not provided in response to other Items, all Documents Concerning the following:

   a.  Empirex;
   b.  All your or Empirex accounts held at Amerant Bank, N.A., Bank of America, N.A., BlueVine, Capital One, N.A., Citibank, N.A., Coastal Community Bank, N.A., JPMorgan Chase Bank, N.A., Santander Bank, N.A., Signature Bank, TD Bank, N.A., Truist Bank, Wells Fargo Bank, N.A., Binance Holdings Ltd., E*Trade Financial Corporation, Gemini Trust Company LLC, Interactive Brokers LLC, Kucoin.com, Robinhood Securities, LLC, TD Ameritrade, Inc., Tradestation Securities, Inc., Webull Financial LLC, Coinbase Inc., and Payward Ventures, Inc. from April 20, 2021 through the present, including, but not limited to, account opening Documents and periodic or other statements;
   c.  All your or Empirex accounts held at all other domestic or foreign banks, brokerages, or other financial institutions not identified in response to any other Item from April 20, 2021 through the present, including, but not limited to, account opening Documents and periodic or other statements;

       d.  the Relevant Entities and Individuals; and,

       e.  All Empirex investors.

29.    All records responsive to Items 1 to 28 above for the time period **<u>January 1, 2018 to June 16, 2022</u>** to the extent not previously produced in response to the prior subpoena dated April 20, 2021 issued to you in connection with this investigation.



**U.S. Securities and Exchange Commission**

**<u>Data Delivery Standards</u>**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>***

General Instructions ................................................................................................................... 1

Delivery Formats ......................................................................................................................... 2

   I.  Imaged Productions .............................................................................................................. 3

      1.  Images .......................................................................................................................... 3

      2.  Image Cross-Reference File ....................................................................................... 3

      3.  Data File ...................................................................................................................... 3

      4.  Text .............................................................................................................................. 3

      5.  Linked Native Files .................................................................................................... 3

   II.  Native File Productions without Load Files ...................................................................... 4

   III.  Adobe PDF File Productions ........................................................................................... 4

   IV.  Audio Files ........................................................................................................................ 4

   V.  Video Files ......................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ................................................................................ 4

   VII.  Electronic Phone Records ............................................................................................... 4

   VIII.  Audit Workpapers ......................................................................................................... 5

   IX.  Mobile Device Data ......................................................................................................... 5

**General Instructions**

<span style="color:red">Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:</span>
<span style="color:red">**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

U.S. Securities and Exchange Commission
Data Delivery Standards

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

Rev 8/2021

U.S. Securities and Exchange Commission
Data Delivery Standards

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

## Delivery Formats

**I. Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

1. **Images**

   a. Black and white images must be 300 DPI Group IV single-page TIFF files.
   b. Color images must be produced in JPEG format
   c. File names cannot contain embedded spaces or special characters (including the comma)
   d. Folder names cannot contain embedded spaces or special characters (including the comma)
   e. All image files must have a unique Bates number
   f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g. The number of image files per folder should not exceed 2,000 files
   h. Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i. AUTOCAD/photograph files should be produced as a single page JPEG file

2. **Image Cross-Reference File**

   The image cross-reference file (LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3. **Data File** The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a. The first line of the .DAT file must be a header row identifying the field names
   b. The .DAT file must use the following *Concordance®* default delimiters:
      Comma ¶ ASCII character (020)
   c. If the .DAT file is produced in Unicode format it must contain the byte order marker
   d. Date fields should be provided in the format: mm/dd/yyyy
   e. Date and time fields must be two separate fields
   f. The time zone must be included in all time fields
   g. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
   i. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j. BEGATTACH and ENDATTACH fields must be two separate fields
   k. A complete list of metadata fields is available in **Addendum A** to this document

4. **Text** Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files** Copies of original email and native file documents/attachments must be included for all electronic productions.

3

Rev 8/2021

    a.   Native file documents must be named per the FIRSTBATES number
    b.   The full path of the native file must be provided in the .DAT file for the LINK field
    c.   The number of native files per folder should not exceed 2,000 files

## II. Native File Production without Load Files

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

## III. Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

## V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI. Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII. Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email:  Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email:  Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

| | | |
|---|---|---|
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

| | | |
|---|---|---|
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record*. Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*. You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*. Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*. Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

**C.  Submissions and Settlements**

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

**D.  Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# ATTACHMENT  G

| From: | Springer, Shelly-Ann |
|---|---|
| To: | "Weinstein, David" |
| Bcc: | Perez, Carmen |
| Subject: | smail Empirex Capital LLC (FL-04274)-Empirex Capital LLC and Rafael Alberto Vargas Gonzalez Extension Requests |
| Date: | Wednesday, June 22, 2022 11:36:00 AM |

Mr. Weinstein

Pursuant to our discussion, we agree to your request for an extension of time to July 21, 2022 for your clients Empirex Capital LLC ("Empirex") and Rafael Alberto Vargas Gonzalez ("Vargas") to produce all documents responsive to their respective Commission subpoenas dated June 16, 2022 with the further agreement that Empirex and Mr. Vargas will commence a rolling production of documents and all documents responsive to their respective subpoenas will be produced earlier if available.  Please do not hesitate to contact me if you would like to discuss this matter further.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

# **ATTACHMENT  H**

| | |
|---|---|
| **From:** | Weinstein, David |
| **To:** | Springer, Shelly-Ann |
| **Subject:** | Empirex Capital LLC/Rafael Vargas |
| **Date:** | Friday, July 22, 2022 7:43:20 PM |
| **Attachments:** | image001.png |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Shelly-Ann,

When we spoke earlier this week I advised you that I have made my client aware of the deadline and extension imposed by your subpoenas.

As of this moment, I have not received any documents from him to send to you.

David

**David S. Weinstein**
Partner
D: 305.679.5754   |   M: 786.877.3474
dweinstein@joneswalker.com



Jones Walker LLP
201 S Biscayne Blvd, Ste 3000
Miami, FL 33131
**joneswalker.com**

# ATTACHMENT  I

| | |
|---|---|
| **From:** | Buitrago, Roberto |
| **To:** | dweinstein@joneswalker.com |
| **Cc:** | Springer, Shelly-Ann |
| **Subject:** | In the Matter of Empirex Capital LLC, FL-04274 |
| **Date:** | Thursday, July 28, 2022 11:59:09 AM |
| **Attachments:** | 2022-07-28--SUBP FOLLOW UP-(R Vargas, Empirex)--To David Weinstein--FL-4274-.pdf |

*Please see attached,*
*If you have any questions or concerns, please direct them to Shelly-Ann Spinger cc'd on this email.*


*Roberto Buitrago*
*Legal Assistant*
*801 Brickell Ave., #1950*
*Miami, Florida 33131*
*T: 305-416-6268*
*F: 703-813-9474*
*buitragor@sec.gov*



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Shelly-Ann A. Springer-Charles
Senior Counsel
(305) 416-6224
springers@sec.gov

July 28, 2022

<u>VIA OVERNIGHT DELIVERY & EMAIL</u>
David S. Weinstein, Esq.
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131-4330
dweinstein@joneswalker.com

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Mr. Weinstein:

As you know, your clients Rafael Alberto Vargas Gonzalez and his entity Empirex Capital LLC ("Empirex") were issued two separate June 16, 2022 subpoenas for documents ("subpoenas") in connection with the above-referenced investigation and all documents responsive to the subpoenas were originally due on June 30, 2022. On June 22, 2022, pursuant to your request for an extension of time, the staff agreed to extend the due date through July 21, 2022, or earlier if available, for Mr. Vargas and Empirex to produce all documents responsive to the subpoenas with the further agreement that Mr. Vargas and Empirex would commence rolling productions of documents. To date we have not received any documents from Mr. Vargas or Empirex responsive to the subpoenas. We are concerned that Mr. Vargas and Empirex have no intention of producing any documents responsive to the subpoenas.

Accordingly, we kindly ask that you confirm with Mr. Vargas whether or not he and his entity, Empirex, intend to produce all documents responsive to the subpoenas. Please communicate his response to me via email at springers@sec.gov by 5:00 p.m., August 1, 2022. Please note, if Mr. Vargas and Empirex intend to produce documents responsive to the subpoenas, they are due by 5:00 p.m., August 4, 2022. Please send the documents to:

ENF-CPU
U.S. Securities and Exchange Commission

14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letter to me at springers@sec.gov.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

SHELLY-ANN
SPRINGER-
CHARLES

Digitally signed by SHELLY-ANN SPRINGER-CHARLES
Date: 2022.07.28 11:20:09 -04'00'

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement

2

# ATTACHMENT  J

| From: | Weinstein, David |
|---|---|
| To: | ENF-Centralized Production Unit |
| Cc: | Springer, Shelly-Ann |
| Subject: | In the Matter of Empirex Capital LLC, FL-04274 |
| Date: | Monday, August 1, 2022 1:13:34 PM |
| Attachments: | image001.png |
| | SEC Cover Letter re Empirex Capital - ENF-CPU Subpoena Compliance - 08.01.22(100562470.1).pdf |
| | EC_38_000383-000389.pdf |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Please see the attached correspondence and attachments.

Sincerely,

David S. Weinstein

**David S. Weinstein**
Partner
D: 305.679.5754  | M: 786.877.3474
dweinstein@joneswalker.com



Jones Walker LLP
201 S Biscayne Blvd, Ste 3000
Miami, FL 33131
**joneswalker.com**



**David S. Weinstein**
D:  305.679.5754
F:  305.679.5838
dweinstein@joneswalker.com

August 1, 2022

**Via E-mail:** ENF-CPU@sec.gov

ENF-CPU
U.S. Securities and Exchange Commission
14420 Albermale Point Place, Suite 102
Chantilly, VA 20151-1750

Re:    In the Matter of Empirex Capital LLC, FL04274

Dear Ms. Springer-Charles:

In response to your letter dated July 28, 2022, Mr. Vargas and his entity, Empirex, do intend to produce documents responsive to the subpoenas.

Enclosed please find document Bates no. EC 38 000383 – 000389 responsive to the SEC subpoena dated, June 16, 2022 in connection with the above referenced matter.

Should any additional responsive documents be discovered, we will provide them to you by 5:00 pm on August 4, 2022.

Please contact me if you have any questions regarding the response to the Subpoena or require additional documents.

Sincerely,
*/s/ David S. Weinstein*
David S. Weinstein

DSW

Cc: Shelly-Ann Springer-Charles, Senior Counsel- via email springers@sec.gov

#100556034v1



**EMPIREX CAPITAL**

## INDEPENDENT CONTRACTOR AGREEMENT

I.    **THE PARTIES. This Independent Contractor Agreement ("Agreement") made**

    **this March 5th 2020 is by and between:**

    **Contractor: ACER MEDIA LLC with a mailing address of 848 Brickell Ave, Miami FL 33130 ("Contractor"), and**

    **Client: EMPIREX CAPITAL LLC with a mailing address of 848 BRICKELL AVE SUITE 10, MIAMI FL 33130 ("Client").**

    **In consideration of the mutual terms, conditions, and covenants hereinafter set forth, Contractor and Client agree as follows:**

II.    **SERVICES. The Client shall pay, and the Client shall provide the following services: Office management activities.**

III.    **TERM. The services shall begin on March 5th 2020 and end by writing with minimum 60 day's notice.**

IV.    **TERMINATION. Either the Client or the Contractor:**
    **☐ - Cannot terminate this Agreement unless either party breaks its terms.**

    **☐ - Can terminate this Agreement, without cause, by giving the other Party 60 days' notice and providing their obligations up until termination.**

V.    **COMPENSATION. In exchange for the services provided by the Contractor, the Client agrees to pay the following: (check one)**

EC 38 000383

☐ - $800/ Week.

☐ - Commission in the amount of 0.5% for OTC payments (BUY/SELL CRYPTO)

**OTHER EXPENSES. In addition to the Contractor's compensation, the Client agrees to pay the Contractor for the following: (check all that apply)**

☐ - **Materials.** The Contractor's materials used for providing the services.

☐ - **Travel Expenses.** The Contractor's travel expenses to and from the location of where the services are being provided in addition to any other needs the services require.

☐ - **Insurance.** Any insurance required by the Contractor that is needed specifically for the services provided.

VII.  **INDEMNIFICATION.** The Contractor shall indemnify and hold the Client harmless from any loss or liability from performing the Services under this Agreement.

VIII.  **INSURANCE NO REQUIRED.** The Contractor is no required to have liability insurance and workers' compensation insurance in accordance with industry standards and state law. The Client has the right to review such insurance policies prior to the commencement of the services.

IX.  **OTHER BUSINESS ACTIVITY.** The Contractor may engage in other business activities provided, however, that Contractor shall not during the term of this Agreement solicit the Client's employees, clients, accounts, or other related business endeavors of the Client.

X.  **ASSIGNMENT.** Neither the Client nor the Contractor may assign this Agreement without the express written consent of the other party.

XI.  **RELATIONSHIP DEFINED.** Nothing in this Agreement shall indicate the Contractor is a partner, agent, or employee of the Client. The Client employs the Contractor as an independent contractor, and the Contractor hereby accepts.

XII.  **OTHER AGREEMENTS.** It is agreed between the parties that there are no other agreements or understandings between them relating to the subject matter of this Agreement. This Agreement supersedes all prior agreements, oral or written, between the parties and is intended as a complete and exclusive statement of the agreement between the parties. No change or modification of this Agreement shall be valid unless the same be in writing and signed by the parties.

XIII.  **LEGAL NOTICE.** All notices or required or permitted to be given hereunder shall be in writing and may be delivered personally or by Certified Mail –

**Return Receipt Requested, postage prepaid, addressed those mentioned in Section I.**

**XIV.**   **GOVERNING LAW. This Agreement shall be construed in accordance with and governed by the laws under the state of FLORIDA.**

IN WITNESS WHEREOF, the Parties have indicated their acceptance of the terms of this Agreement by their signatures below on the dates indicated.

Agreed,

Rafael Vargas

Empirex Capital

David Acero

Acer Media LLC



**EMPIREX CAPITAL**

## <mark>INDEPENDENT CONTRACTOR AGREEMENT</mark>

I.    **THE PARTIES. This Independent Contractor Agreement ("Agreement") made**

    **this March 5th 2020 is by and between:**

    **Contractor: INTELLECT MANAGEMENT LLC with a mailing address of 80 Harding ave Miami Beach FL ("Contractor"), and**

    **Client: EMPIREX CAPITAL LLC with a mailing address of 848 BRICKELL AVE SUITE 10, MIAMI FL 33130 ("Client").**

    **In consideration of the mutual terms, conditions, and covenants hereinafter set forth, Contractor and Client agree as follows:**

II.    **SERVICES. The Client shall pay, and the Client shall provide the following services: Office management activities.**

III.    **TERM. The services shall begin on March 5th 2020 and end by writing with minimum 60 day's notice.**

IV.    **TERMINATION. Either the Client or the Contractor:**
    **☐ - Cannot terminate this Agreement unless either party breaks its terms.**

    **☐ - Can terminate this Agreement, without cause, by giving the other Party 60 days' notice and providing their obligations up until termination.**

V.    **COMPENSATION. In exchange for the services provided by the Contractor, the Client agrees to pay the following: (check one)**

EC 38 000386

☐ - **$1,000 / Week.**

☐ - **Commission in the amount of 0.5% for OTC payments (BUY/SELL CRYPTO)**

**OTHER EXPENSES. In addition to the Contractor's compensation, the Client agrees to pay the Contractor for the following: (check all that apply)**

☐ - **Materials. The Contractor's materials used for providing the services.**

☐ - **Travel Expenses. The Contractor's travel expenses to and from the**

**location of where the services are being provided in addition to any other needs the services require.**

☐ - **Insurance. Any insurance required by the Contractor that is needed specifically for the services provided.**

VII.   **INDEMNIFICATION. The Contractor shall indemnify and hold the Client harmless from any loss or liability from performing the Services under this Agreement.**

VIII.  **INSURANCE NO REQUIRED. The Contractor is no required to have liability insurance and workers' compensation insurance in accordance with industry standards and state law. The Client has the right to review such insurance policies prior to the commencement of the services.**

IX.    **OTHER BUSINESS ACTIVITY. The Contractor may engage in other business activities provided, however, that Contractor shall not during the term of this Agreement solicit the Client's employees, clients, accounts, or other related business endeavors of the Client.**

X.     **ASSIGNMENT. Neither the Client nor the Contractor may assign this Agreement without the express written consent of the other party.**

XI.    **RELATIONSHIP DEFINED. Nothing in this Agreement shall indicate the Contractor is a partner, agent, or employee of the Client. The Client employs the Contractor as an independent contractor, and the Contractor hereby accepts.**

XII.   **OTHER AGREEMENTS. It is agreed between the parties that there are no other agreements or understandings between them relating to the subject matter of this Agreement. This Agreement supersedes all prior agreements, oral or written, between the parties and is intended as a complete and exclusive statement of the agreement between the parties. No change or modification of this Agreement shall be valid unless the same be in writing and signed by the parties.**

XIII.  **LEGAL NOTICE. All notices or required or permitted to be given hereunder shall be in writing and may be delivered personally or by Certified Mail –**

**Return Receipt Requested, postage prepaid, addressed those mentioned in Section I.**

**XIV.      GOVERNING LAW. This Agreement shall be construed in accordance with and governed by the laws under the state of FLORIDA.**

IN WITNESS WHEREOF, the Parties have indicated their acceptance of the terms of this Agreement by their signatures below on the dates indicated.

Agreed,

Rafael Vargas                                     Catherine Rojas

Empirex Capital                                  Intellect Management LLC

EC 38 000388

spectus, Current Reports, 8-K, 10K, Annual Reports) filed by Empirex Capital Llc.

Case 1:22-mc-22752-DPG   Document 1-3   Entered on FLSD Docket 08/30/2022   Page 172 of 287

021-373263

FLORIDA

12-31

2020-08-14

848 BRICKELL AVE
SUITE 1005
MIAMI FL 33131

2012079236

1451 BRICKELL AVE
UNIT 4203
MIAMI
FL
33131

2020-08-07 08:04:16

# ATTACHMENT  K



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

April 11, 2022

<u>VIA OVERNIGHT DELIVERY</u>
AKC Management LLC
c/o Paola Vargas, MGR, Registered Agent
221 SW 12th Street
# PH4
Miami, FL 33130

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Ms. Vargas:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to AKC Management LLC ("AKC"), in connection with the above-referenced investigation.

The enclosed subpoena requires AKC to produce documents to the SEC by April 25, 2022. Please deliver the materials by April 25, 2022 at 5:00 p.m. to:

ENF-CPU
U.S. Securities and Exchange Commission
14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to me at springers@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if AKC prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

When producing the records, please consecutively number and mark each document produced with a symbol that identifies it as being produced by AKC.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe AKC has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of AKC complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by AKC in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that AKC provides to the Commission and has other important information.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

SHELLY-ANN
SPRINGER-
CHARLES

Digitally signed by
SHELLY-ANN SPRINGER-
CHARLES
Date: 2022.04.11 10:51:47
-04'00'

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement
(305) 416-6224
springers@sec.gov

Enclosures:        Subpoena and Attachment
                   SEC Data Delivery Standards
                   SEC Form 1662
                   Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**   AKC Management LLC
c/o Paola Vargas, MGR, Registered Agent
221 SW 12th Street
# PH4
Miami, FL 33130

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than April 25, 2022 at 5:00 p.m.

---

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: SHELLY-ANN SPRINGER-CHARLES   Digitally signed by SHELLY-ANN SPRINGER-CHARLES Date: 2022.04.11 10:53:37 -04'00'          Date:   April 11, 2022

Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR AKC MANAGEMENT LLC**
<u>In the Matter of Empirex Capital LLC, FL-04274</u>

April 11, 2022

**<u>Definitions</u>**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.      "AKC Management LLC" means the entity doing business under the name "AKC Management LLC" ("AKC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.      "Empirex Capital LLC" means the entity doing business under the name "Empirex Capital LLC" ("Empirex"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.      "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

4.      A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

5.      "Acero" means (i) Roman David Acero Quintero and/or (ii) any present or former representative of Acero.

6.      "Gonzalez" means (i) Martha Gonzalez and/or (ii) any present or former representative of Gonzalez.

7.      "P. Vargas" means (i) Paola Andrea Vargas Gonzalez, and/or (ii) any present or former representative of P. Vargas.

8.      "R. Vargas" means (i) Rafael Alberto Vargas Gonzalez, and/or (ii) any present or former representative of R. Vargas.

9.      "Rojas" means (i) Catherine Rojas and/or (ii) any present or former representative of Rojas.

10.     "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in

1

the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

11. "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

12. "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

13. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

14. The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

15. The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

16. To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
    a. the word "or" means "and/or";
    b. the word "and" means "and/or";
    c. the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

d.     the masculine gender includes the female gender and the female gender includes the masculine gender; and

e.     the singular includes the plural and the plural includes the singular.

17.     "Relevant Period" means the time period beginning January 1, 2018, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

18.     "Relevant Entities and Individuals" means each of the following: Empirex, Acero, Gonzalez, P. Vargas, R. Vargas, Rojas, and any entity or individual Concerning the recruiting of Empirex investors or the sale of an Empirex investment to investors.

## Instructions

1.     Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.     For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.     Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.     In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.     Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period from January 1, 2018, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

    a.      its author(s);
    b.      its date;
    c.      its subject matter;
    d.      the name of the Person who has the item now, or the last Person known to have it;
    e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.      the basis upon which you are not producing the responsive Document;
    g.      the specific request in the subpoena to which the Document relates;
    h.      the attorney(s) and the client(s) involved; and
    i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## Documents to be Produced

1. Documents sufficient to disclose the corporate structure of AKC, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

2. Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of AKC, and Documents sufficient to disclose, for each individual identified in response to this Item:
   a. title;
   b. dates of affiliation with AKC;
   c. current or last known home address and telephone number;
   d. current or last known employment address and telephone number; and,
   e. salary or other compensation for each year from January 1, 2018 to the present;

3. Documents sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held by or on behalf of AKC from January 1, 2018 to the present, and Documents sufficient to disclose, for each account identified in response to this Item:
   a. the name, address, and telephone number of the financial institution where the account is held, maintained, directed or controlled;
   b. the account number;
   c. the name, address, and telephone number of the branch office, if any, where the account is held, maintained, or directed;
   d. the account name; and,
   e. the date the account was opened;

4. Documents sufficient to disclose all other assets held by or on behalf of AKC;

5. All draft and final financial reports Concerning AKC including, but not limited to, audited and unaudited financial statements, including balance sheets and statements of income and retained earnings and cash flows, as well as all ledgers, journals, and workpapers used to prepare and support AKC's financial statements, balance sheets, copies of filed federal and state corporate income tax returns and 1099/1098/1096 tax returns, w-2s and payroll tax returns, trial balances, cash receipt journals, bank statements, copies of canceled checks, deposit records with copies of deposit items, cash disbursement journals, balance sheets, statements of income and retained earnings, and any other report of receipts, disbursements, net profits and losses, and cash flow;

6. All Documents Concerning Agreements, contracts, loans, notes, or understandings between AKC and any of the Relevant Entities and Individuals;

7. All Documents Concerning Agreements, contracts, loans, notes, or understandings among or between the Relevant Entities and Individuals Concerning Empirex;

8. All Documents or Communications Concerning Empirex;

5

9.     Documents sufficient to identify all AKC investors, Concerning or referred by any of the Relevant Entities and Individuals, and all Empirex investors by name, address, and telephone number;

10.    For each investor identified in response to Item 9 above, Documents sufficient to disclose:
       a.  the amount invested;
       b.  the date(s) of investments; and,
       c.  whether, when, and how much of each investors' principal has been returned to them;

11.    For each investor identified in response to Item 9 above, all Documents Concerning agreements or contracts between AKC or Empirex and the investor and all Documents Concerning terms of investments;

12.    For each investor identified in response to Item 9 above, all periodic or other account statements;

13.    For each investor identified in response to Item 9 above, all Documents Concerning the investment of (or other use of) their funds by AKC or Empirex and the current location of investor funds;

14.    All Documents and Communications Concerning all investment, promotional, sales, marketing, or advertising materials offered, sold, advertised, distributed, or otherwise disseminated, directly or indirectly, by AKC or Empirex or any of the Relevant Entities and Individuals to AKC investors, Concerning or referred by any of the Relevant Entities and Individuals, or Empirex investors, including, but not limited to, offering memoranda and attachments, business and projection plans, subscription agreements, and operating agreements;

15.    Documents sufficient to identify all individuals or entities who any of the Relevant Entities and Individuals solicited as potential investors but did not ultimately invest in AKC or Empirex;

16.    All Documents Concerning the payment of fees to any individual or entity in connection with the recruiting of AKC investors by any of the Relevant Entities and Individuals or Empirex investors or the sale of an AKC investment by any of the Relevant Entities and Individuals to investors or the sale of an Empirex investment to investors;

17.    All Documents Concerning Communications between AKC or any of the Relevant Entities and Individuals and investors or potential investors in AKC, Concerning or referred by any of the Relevant Entities and Individuals, or investors in Empirex;

18.    All Documents and Communications Concerning all Empirex investors;

19. All Documents and Communications Concerning funds received by AKC from the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such receipts;

20. All Documents and Communications Concerning funds disbursed by AKC to the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such disbursements;

21. All Documents Concerning all Communications between AKC and the Relevant Entities and Individuals during the Relevant Period Concerning:
    a. AKC;
    b. Empirex;
    c. Acero;
    d. Gonzalez;
    e. Rojas;
    f. P. Vargas;
    g. R. Vargas;
    h. all funds received by the Relevant Entities and Individuals directly or indirectly from AKC;
    i. all funds disbursed by the Relevant Entities and Individuals directly or indirectly to AKC;
    j. all funds received or disbursed by AKC; and,
    k. all Agreements, contracts, loans, notes, or understandings between AKC and the Relevant Entities and Individuals; and,

22. To the extent not provided in response to other Requests, all Documents Concerning the following:
    a. All AKC accounts held at Bank of America, N.A., JPMorgan Chase Bank, N.A., and Wells Fargo Bank, N.A. from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;
    b. All other AKC accounts held at all other domestic or foreign banks, brokerages, or other financial institutions from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;
    c. The Relevant Entities and Individuals;
    d. All AKC investors, Concerning or referred by any of the Relevant Entities and Individuals;
    e. All Empirex Investors; and,
    f. All funds or assets, including, but not limited to, the purpose of the funds or assets, deposited into any AKC bank, brokerage, or cryptocurrency account by any individual or entity.

### DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
### OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1.  I am employed by AKC Management LLC as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2.  I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

    (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

    (b) kept in the course of regularly conducted business activity; and

    (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].


_____
[*Name*]



**U.S. Securities and Exchange Commission**

**<u>Data Delivery Standards</u>**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>***

General Instructions ...................................................................................................................... 1

Delivery Formats ........................................................................................................................... 2

   I.  Imaged Productions ............................................................................................................... 3

      1.  Images ....................................................................................................................... 3

      2.  Image Cross-Reference File ...................................................................................... 3

      3.  Data File ................................................................................................................... 3

      4.  Text .......................................................................................................................... 3

      5.  Linked Native Files ................................................................................................. 3

   II.  Native File Productions without Load Files ........................................................................ 4

   III.  Adobe PDF File Productions .............................................................................................. 4

   IV.  Audio Files ......................................................................................................................... 4

   V.  Video Files ........................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ................................................................................... 4

   VII.  Electronic Phone Records ................................................................................................. 4

   VIII.  Audit Workpapers .......................................................................................................... 5

   IX.  Mobile Device Data .......................................................................................................... 5

**General Instructions**

<span style="color:red">Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
    a. Case number, case name and requesting SEC staff member name
    b. A list of each piece of media included in the production with its unique production volume number
    c. A list of custodians, identifying the Bates range for each custodian
    d. The time zone in which the emails were standardized during conversion
    e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

U.S. Securities and Exchange Commission
Data Delivery Standards

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.    Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.   Images**

a.   Black and white images must be 300 DPI Group IV single-page TIFF files
b.   Color images must be produced in JPEG format
c.   File names cannot contain embedded spaces or special characters (including the comma)
d.   Folder names cannot contain embedded spaces or special characters (including the comma)
e.   All image files must have a unique file name, i.e. Bates number
f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
g.   The number of image files per folder should not exceed 2,000 files
h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

a.   The first line of the .DAT file must be a header row identifying the field names
b.   The .DAT file must use the following *Concordance®* default delimiters:

Comma ¶ ASCII character (020)
Quote þ ASCII character (254)

c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
d.   Date fields should be provided in the format: mm/dd/yyyy

f.   The time zone must be included in all time fields
g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
j.   BEGATTACH and ENDATTACH fields must be two separate fields
k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

Rev 8/2021

a.   Native file documents must be named per the FIRSTBATES number
b.   The full path of the native file must be provided in the .DAT file for the LINK field
c.   The number of native files per folder should not exceed 2,000 files

## II.  Native File Production without Load Files

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

## III.  Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.

1.  All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2.  PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3.  All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV.  Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

## V.  Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI.  Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII.  Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a.  The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email **This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments **The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. Native: (empty) **This data must be a separate field and cannot be combined with the DATE_SENT field |

Rev 8/2021

| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
|---|---|---|
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

Rev 8/2021

U.S. Securities and Exchange Commission
Data Delivery Standards

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 8/2021

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

**C.  Submissions and Settlements**

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

**D.  Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# **ATTACHMENT  L**

**From:**  Paula Mejia
**To:**  Springer, Shelly-Ann
**Cc:**  "David Joffe, Esq."
**Subject:**  United States and Exchange Commission Investigation in the matter of Empirex Capital LLC, FL-04274 - Legal Representation of AKC Management LLC and Paola Vargas, MNG, Registered Agent
**Date:**  Tuesday, April 26, 2022 3:44:58 PM
**Attachments:**  image001.png
Representation_Letter.pdf

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon,

My name is Paula and I am David J. Joffe, Esquire paralegal.

Please be advised that this office represents AKC Management LLC and Paola Vargas, MGR, Registered Agent in the referenced matter.

Attached please find the Notice of Legal Representation.

Thank you.

Respectfully,



Paula M.
Paralegal
Joffe Law, P.A.
The 110 Tower
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
T: 954-723-0007
F: 954-723-0033

https://www.joffefederaldefense.com/

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

# Joffe Law, P.A.

## David J. Joffe, Esq.

The 110 Tower
110 SE 6th Street
Suite 1700
Fort Lauderdale, Florida 33301

Tel:  (954) 723-0007
Fax:  (954) 723-0033
e-mail: davidjjoffe@aol.com

April 26, 2022

VIA EMAIL
springers@sec.gov

**SHELLY-ANN A. SPRINGER-CHARLES**
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131

>        Re:     Notice of Legal Representation
>                AKC Management LLC and Paola Vargas, MGR, Registered Agent

Dear Ms. Springer-Charles:

Please be advised that this office represents AKC Management LLC and Paola Vargas, MGR, Registered Agent in the Matter of Empirex Capital LLC, FL-04274. Please direct any further communications regarding this matter to our office.

Very truly yours,

*David J. Joffe*
DAVID J. JOFFE, ESQ.

# ATTACHMENT  M

| | |
|---|---|
| **From:** | Springer, Shelly-Ann |
| **To:** | "Davidjjoffe@aol.com" |
| **Bcc:** | Perez, Carmen |
| **Subject:** | smail Empirex Capital LLC (FL-04274)-AKC Management LLC and Paola Vargas |
| **Date:** | Wednesday, April 27, 2022 9:08:00 AM |

Mr. Joffe,

Thank you for providing confirmation of your firm's representation of AKC Management LLC ("AKC") and Paola Vargas in connection with the subject matter.

Pursuant to our discussion, below, in italics, is a sample of the representations that must be included in a request for a copy of a Formal Order of Investigation.  The request must be made by a person or counsel for a person who has been asked to furnish documents or testimony in the formal investigation for which the person is requesting a copy of the formal order.  The request should be made in writing and **directed to** a Division of Enforcement official at the Assistant Director level or higher who in this matter is, **Eric Busto, Assistant Regional Director**.  Eric and I share the same address below.  Feel free to mail the request letter directly to Eric, or PDF and email a copy of the signed request to me and I will forward it on to Eric.  The relevant matter in this case is Empirex Capital LLC (FL-04274).

*The undersigned represents [client's name] in the above captioned matter.  Pursuant to 17 C.F.R. §203.7 [I/we] hereby request on behalf of [my/our] client[s] to be furnished with a copy of the Commission's Formal Order of Investigation in the above matter.  [I/We] warrant that the Formal Order and information contained therein will remain confidential and will not be disseminated to any person or party except [my/our] client[s] for use in connection with [my/our] representation of [him/her/it/them] in this matter.*

As you know, AKC's response to the Commission's subpoena dated April 11, 2022 to AKC was due on April 25, 2022.  In connection with your request for an extension of time for AKC to provide responsive documents, we can agree to an extension of time through May 11, 2022 for AKC to produce all documents responsive to the subpoena with the additional agreement that AKC will being a rolling production of responsive documents prior to this date.  Please do not hesitate to contact me if you would like to discuss this matter further.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

# ATTACHMENT  N

| From: | Springer, Shelly-Ann |
|---|---|
| To: | "Davidjjoffe@aol.com" |
| Bcc: | Perez, Carmen |
| Subject: | smail FW: smail Empirex Capital LLC (FL-04274)-AKC Management LLC and Paola Vargas |
| Date: | Friday, April 29, 2022 3:44:00 PM |

Mr. Joffe,

Pursuant to our discussion, I am forwarding the email I sent you earlier this week.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

---

**From:** Springer, Shelly-Ann
**Sent:** Wednesday, April 27, 2022 9:08 AM
**To:** 'Davidjjoffe@aol.com' <Davidjjoffe@aol.com>
**Subject:** smail Empirex Capital LLC (FL-04274)-AKC Management LLC and Paola Vargas

Mr. Joffe,

Thank you for providing confirmation of your firm's representation of AKC Management LLC ("AKC") and Paola Vargas in connection with the subject matter.

Pursuant to our discussion, below, in italics, is a sample of the representations that must be included in a request for a copy of a Formal Order of Investigation. The request must be made by a person or counsel for a person who has been asked to furnish documents or testimony in the formal investigation for which the person is requesting a copy of the formal order. The request should be made in writing and **directed to** a Division of Enforcement official at the Assistant Director level or higher who in this matter is, **Eric Busto, Assistant Regional Director**. Eric and I share the same address below. Feel free to mail the request letter directly to Eric, or PDF and email a copy of the signed request to me and I will forward it on to Eric. The relevant matter in this case is Empirex Capital LLC (FL-04274).

*The undersigned represents [client's name] in the above captioned matter. Pursuant to 17 C.F.R. §203.7 [I/we] hereby request on behalf of [my/our] client[s] to be furnished with a copy of the Commission's Formal Order of Investigation in the above matter. [I/We] warrant that the Formal Order and information contained therein will remain confidential and will not be disseminated to any*

*person or party except [my/our] client[s] for use in connection with [my/our] representation of [him/her/it/them] in this matter.*

As you know, AKC's response to the Commission's subpoena dated April 11, 2022 to AKC was due on April 25, 2022.  In connection with your request for an extension of time for AKC to provide responsive documents, we can agree to an extension of time through May 11, 2022 for AKC to produce all documents responsive to the subpoena with the additional agreement that AKC will being a rolling production of responsive documents prior to this date.  Please do not hesitate to contact me if you would like to discuss this matter further.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

# ATTACHMENT  O

**From:** Perez, Carmen
**To:** "davidtjoffe@aol.com"
**Cc:** Springer, Shelly-Ann
**Subject:** SMAIL FL-04274
**Date:** Tuesday, May 10, 2022 2:55:20 PM
**Attachments:** image001.png
Paola A. Vargas 5-10-2022.pdf

Mr. Joffe,

Please see attached correspondence.

Regards,
Carmen R. Perez



Carmen R. Perez
Senior Paralegal Specialist
United States Securities and Exchange Commission
Miami Regional Office, Division of Enforcement
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
P: 305.982.6350
F: 703.813-.9558
    Email: perezc@sec.gov
Website: https://www.sec.gov/regional-office/miami

This electronic communication, including any attachments, is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, nonpublic and confidential. Erroneous delivery of this message to an unintended recipient should not be construed as a waiver of any privilege that may otherwise attach to the information contained herein. If you have received this communication in error, please notify the sender by return email, and delete or otherwise remove this communication and any copies permanently from your operating system. Any unauthorized disclosure, use, distribution, or reproduction of this message is prohibited and may be unlawful.

Note that emails sent to or from this email address are subject to retention and archiving by the United States Securities and Exchange Commission.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

May 10, 2022

<u>VIA OVERNIGHT DELIVERY & EMAIL</u>
Paola A. Vargas
c/o David J. Joffe, Esq.
Joffe Law, P.A.
The 110 Tower
110 SE 6th Street
Suite 1700
Fort Lauderdale, Florida 33301
davidjjoffe@aol.com

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Mr. Joffe:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for testimony issued to your client, Paola A. Vargas, in connection with the above-referenced investigation.

The subpoena requires your client, Paola A. Vargas, to appear for testimony conducted by audio-visual teleconference means, using the WebEx Internet platform, Wednesday, June 8, 2022 at 10:00 a.m. EDT.  I will send you and your client a WebEx invitation directed to your email addresses, to enable you to access the testimony session.

A background questionnaire is also enclosed. During your client's testimony, the staff intends to ask background questions concerning, among other things, your client's residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that your client complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your client's testimony.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information

Pursuant to a Commission Subpoena." This form explains how we may use the information that your client provides to the Commission and has other important information for your client. Please provide a copy of this form to your client.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,


Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement
(305) 416-6224
springers@sec.gov


Enclosures:        Subpoena
                   SEC Form 1662
                   Background Questionnaire



## SUBPOENA

# UNITED STATES OF AMERICA
# SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**    Paola A. Vargas
c/o David J. Joffe, Esq.
Joffe Law, P.A.
The 110 Tower
110 SE 6th Street
Suite 1700
Fort Lauderdale, Florida 33301
davidjjoffe@aol.com

☐    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

☒    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**Wednesday, June 8, 2022 at 10:00 a.m. EDT**, by audio-visual teleconference means, using the WebEx Internet platform.  You are to access the testimony session through a WebEx invite, which will be sent from Shelly-Ann A. Springer-Charles, Senior Counsel, to you and your counsel.
**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.

If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.


By:  _____          Date:    May 10, 2022
Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## **BACKGROUND QUESTIONNAIRE**

**Please respond to the following questions. Answering these questions will reduce the amount of time spent on background information when you testify. You may use the space provided, attaching additional sheets as necessary, or supply the information in a separate document. If you would like an electronic version of this document, please contact us and we will provide you with one.**

Today's date: _____

1.  What is your full name?

2.  Have you ever been known by any other name? Yes _____    No _____
    If yes, list each such name and the period(s) in which you were known by that name.

3.  Date and place of birth?

4.  Country of citizenship?

5.  Marital Status?  Married ____    Divorced ____    Single ____

6.  List the names, ages, and occupations of your children, if any.

7.  List the names, ages and occupations of your parents and siblings.

Background Questionnaire
Page 2

8.  List all residences you occupied at any time during the last three years, including vacation homes, beginning with your current residence.  For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

9.  List the names of any individuals who assisted you in completing this questionnaire.

ELECTRONIC COMMUNICATIONS ACCOUNTS

10. List all telephone numbers and telecommunication services that were in your name or that you regularly used at any time between January 1, 2018 and the present. Include all residential business, cellular, credit card, and VOIP numbers, and services such as Google Voice, Skype, and video conference services. For each telephone number, state the name of the corresponding carrier (e.g., AT&T, Verizon, Vonage, Skype, etc.).

11. List the universal resource locator (URL) for all websites or blogs that you established or for which you had the authority to control content at any time between January 1, 2018 and the present. For each website, state the name(s) of the domain name registrar (e.g. GoDaddy) through which the URL was obtained, the name(s) of all individuals or entities who provided web site hosting or design services, whether the website contained primarily business or personal information, and the time period in which it was active.

Background Questionnaire
Page 3

12. List all electronic mail addresses and social networking accounts (e.g.Facebook, LinkedIn, Twitter, Instagram, Flickr, Google+) that were in your name or that you regularly used at any time between January 1, 2018 and the present. Include all personal, business, or shared electronic mail addresses and social networking accounts. For each electronic mail address and social networking account, state the name(s) of the corresponding internet service provider(s) (e.g. Google, Yahoo, AOL, or your employer), whether the address was used primarily for business or personal correspondence, and the time period in which it was active.

13. List all usernames for instant messaging and similar electronic communications services (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in response to questions above, that were in your name or that you regularly used at any time between January 1, 2018 and the present. Include all personal, business, and shared addresses. For each username, state the name(s) of the communication service provider (e.g. Google, AOL, etc.), whether the address was used primarily for business or personal correspondence, the time period in which it was active, and the name of the software application(s) (e.g. GTalk, ICQ, MSN Messenger) you used to access it.

14. List all internet message boards and discussion forums (including, but not limited to, Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a member or on which you posted messages at any time between January 1, 2018 and the present. For each message board or discussion forum, state the service provider and your member name or identification information.

Background Questionnaire
Page 4

## PUBLICLY-HELD COMPANIES

15. Are you now, or have you ever been, an officer or director of any publicly-held company?
    Yes ____ No ____.

16. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per
    cent or more of any class of equity securities of any publicly held company?  Yes ____ No
    ____.

## PRIVATELY-HELD COMPANIES

17. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any
    privately-held company (i.e., corporation, partnership, limited liability company or other
    corporate form)?

18. Are you now, or have you ever been, a manager or a member of any privately-held company
    (i.e., corporation, partnership, limited liability company or other corporate form)?

Background Questionnaire
Page 5

<u>SECURITIES ACCOUNTS</u>

19. List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time between January 1, 2018 and the present.  Include all foreign accounts. For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (i.e., cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

20. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to the previous question, in which you had any direct or indirect beneficial interest at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the previous question.

21. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answers to the two previous questions, over which you had any control at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the first question in this section.

Background Questionnaire
Page 6

<u>BANK ACCOUNTS</u>

22. List all accounts you have held in your name at any financial institution (i.e., bank, thrift, or credit union) at any time between January 1, 2018 and the present.  Include all foreign accounts.  For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (i.e., checking, savings, money market or IRA); (iv) the account number; and (v) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

23. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to the previous question, in which you had any direct or indirect beneficial interest at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the previous question.

24. List all accounts at financial institutions (including foreign accounts), other than those listed in your answers to the two previous questions, over which you had any control at any time between January 1, 2018 and the present.  For each such account, provide the information requested by the first question in this section.

Background Questionnaire
Page 7

25. List any other accounts (including foreign accounts), other than those listed in your answers to the previous questions in this section, that were held in your name, in which you had any direct or indirect beneficial interest, or over which you had any control, that you have used to transfer funds between January 1, 2018 and the present, including, but not limited to, PayPal accounts.  For each such account, provide the information requested by the first question in this section.

PRIOR PROCEEDINGS

26. Have you ever testified in any proceeding conducted by the staff of the Securities and Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any other self-regulatory organization ("SRO"), or in any arbitration proceeding related to securities transactions?

27. Have you ever been deposed in connection with any court proceeding? Yes ____ No ____.

28.  Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes ____ No ____.

Background Questionnaire
Page 8

29. Have you ever been a defendant in any action (other than those listed in response to the previous question) alleging violations of the federal securities laws? Yes _____ No _____.

30. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes _____ No _____.

 EDUCATIONAL HISTORY

31. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

32. Other than courses taken in connection with institutions listed in response to question 31, list any securities, accounting or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

PROFESSIONAL LICENSES/CLUBS

33. Do you hold, or have you ever held, any professional license?  Yes _____ No _____.

34. For CPA licenses held, please provide: (i) license number; (ii) dates license was in an active status (i.e., licensed to practice public accounting); and (iii) dates license was not active.

Background Questionnaire
Page 9

35. Are you, or have you ever been, a member of any professional or business club or organization?   Yes _____ No _____.

36. Are you, or have you been at any time between January 1, 2018 and the present, a member of any social clubs, charities or nonprofit organizations?   Yes _____ No _____.

<u>EMPLOYMENT HISTORY</u>

37. Are you, or have you ever been, an employee of a broker, dealer, investment adviser, investment company, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization?   Yes _____ No _____.

38. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae. For each position you have held (including multiple positions or titles with the same employer), provide the following information:

CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5. *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E.  Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F.  Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G.  Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H.  Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# ATTACHMENT  P

| | |
|---|---|
| **From:** | Springer, Shelly-Ann |
| **To:** | "Davidjjoffe@aol.com" |
| **Bcc:** | Perez, Carmen |
| **Subject:** | smail RE: smail RE: smail FL-04274-AKC Management LLC Document Production and Paola Vargas Testimony |
| **Date:** | Friday, May 20, 2022 9:10:00 AM |

Mr. Joffe,

Pursuant to the voicemail I just left, I was following up on the below.  I also would like to discuss an email that I plan to send to you ahead of testimony where we ask you and your client, Paola Vargas, to make certain representations regarding the testimony format ahead of the testimony.  Please free to give me a call or respond via email at your earliest convenience.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

**From:** Springer, Shelly-Ann
**Sent:** Tuesday, May 17, 2022 3:00 PM
**To:** 'Davidjjoffe@aol.com' <Davidjjoffe@aol.com>
**Subject:** smail RE: smail FL-04274-AKC Management LLC Document Production and Paola Vargas Testimony

Mr. Joffe,

Pursuant to the voicemail I just left, I was following up on the below.  I saw your text message that you are currently in a reverse proffer with the USAO.  Feel free to give me a call or respond via email at your earliest convenience.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224

Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

---

**From:** Springer, Shelly-Ann
**Sent:** Monday, May 16, 2022 10:06 AM
**To:** 'Davidjjoffe@aol.com' <Davidjjoffe@aol.com>
**Subject:** smail FL-04274-AKC Management LLC Document Production and Paola Vargas Testimony

Mr. Joffe,

As you know, all documents responsive to the Commission's April 11, 2022 subpoena to your client AKC Management LLC ("AKC") were originally due on April 25, 2022 and later, in connection with your request for an extension, on May 11, 2022. When we spoke on May 11, 2022, you indicated you planned to meet with your client on Friday, May 13, 2022 to discuss the production of documents and would get back to me that day with the date on which we could expect all responsive documents. Pursuant to my voicemail of today, I did not hear from you on Friday and wanted to touch base for an update on when we can expect all of the documents responsive to the Commission's April 11, 2022 subpoena to AKC.

In addition, pursuant to my voicemail, please let me know if your client, Paola Vargas, will require a translator at her Wednesday, June 8, 2022 testimony. If so, please let me know what language the translator needs to speak.

Please feel free to give me a call to discuss.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

| From: | Springer, Shelly-Ann |
|---|---|
| To: | "Davidjjoffe@aol.com" |
| Bcc: | Perez, Carmen |
| Subject: | smail RE: smail FL-04274-AKC Management LLC Document Production and Paola Vargas Testimony |
| Date: | Tuesday, May 17, 2022 3:00:00 PM |

Mr. Joffe,

Pursuant to the voicemail I just left, I was following up on the below. I saw your text message that you are currently in a reverse proffer with the USAO. Feel free to give me a call or respond via email at your earliest convenience.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

**From:** Springer, Shelly-Ann
**Sent:** Monday, May 16, 2022 10:06 AM
**To:** 'Davidjjoffe@aol.com' <Davidjjoffe@aol.com>
**Subject:** smail FL-04274-AKC Management LLC Document Production and Paola Vargas Testimony

Mr. Joffe,

As you know, all documents responsive to the Commission's April 11, 2022 subpoena to your client AKC Management LLC ("AKC") were originally due on April 25, 2022 and later, in connection with your request for an extension, on May 11, 2022. When we spoke on May 11, 2022, you indicated you planned to meet with your client on Friday, May 13, 2022 to discuss the production of documents and would get back to me that day with the date on which we could expect all responsive documents. Pursuant to my voicemail of today, I did not hear from you on Friday and wanted to touch base for an update on when we can expect all of the documents responsive to the Commission's April 11, 2022 subpoena to AKC.

In addition, pursuant to my voicemail, please let me know if your client, Paola Vargas, will require a translator at her Wednesday, June 8, 2022 testimony. If so, please let me know what language the translator needs to speak.

Please feel free to give me a call to discuss.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

| | |
|---|---|
| **From:** | Springer, Shelly-Ann |
| **To:** | "Davidjjoffe@aol.com" |
| **Bcc:** | Perez, Carmen |
| **Subject:** | smail FL-04274-AKC Management LLC Document Production and Paola Vargas Testimony |
| **Date:** | Monday, May 16, 2022 10:05:00 AM |

Mr. Joffe,

As you know, all documents responsive to the Commission's April 11, 2022 subpoena to your client AKC Management LLC ("AKC") were originally due on April 25, 2022 and later, in connection with your request for an extension, on May 11, 2022.  When we spoke on May 11, 2022, you indicated you planned to meet with your client on Friday, May 13, 2022 to discuss the production of documents and would get back to me that day with the date on which we could expect all responsive documents.  Pursuant to my voicemail of today, I did not hear from you on Friday and wanted to touch base for an update on when we can expect all of the documents responsive to the Commission's April 11, 2022 subpoena to AKC.

In addition, pursuant to my voicemail, please let me know if your client, Paola Vargas, will require a translator at her Wednesday, June 8, 2022 testimony.  If so, please let me know what language the translator needs to speak.

Please feel free to give me a call to discuss.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

# ATTACHMENT  Q

+1 (754) 423-6057 ›

iMessage
Tue, May 17, 2:53 PM

I am currently in a reverse proffer with the USAO.

The sender is not in your contact list.

**Report Junk**

iMessage

# ATTACHMENT  R

**From:** Perez, Carmen
**To:** "davidjoffe@aol.com"
**Cc:** Springer, Shelly-Ann
**Subject:** SMALL FL-04274 Correspondence
**Date:** Tuesday, May 31, 2022 12:32:24 PM
**Attachments:** Empirex Capital LLC (FL-04274)-May 31, 2022 letter to David J. Joffe, Esq.pdf

Please see attached correspondence.

Regards,



*Carmen R. Perez,* Senior Paralegal Specialist
Miami Regional Office, Division of Enforcement
U.S. Securities and Exchange Commission
801 Brickell Ave, Suite 1950, Miami, FL 33131
Phone: (305) 982-6350 Fax: (703) 813-9558
Email: perezc@sec.gov

Website: https://www.sec.gov/regional-office/miami

**CONFIDENTIALITY NOTICE:** This electronic communication, including attachments, if any, is intended only for the individual or entity to which it is addressed and may contain confidential, non-public and/or privileged material. Erroneous delivery of this message to an unintended recipient should not be construed as a waiver of any privilege that may otherwise attach to the information contained herein. Any unauthorized review, use, disclosure or distribution is prohibited. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, copy or forward this E-mail message. This is strictly prohibited. If you have received this E-mail in error, please notify the sender immediately and delete the original and any copies permanently from your system. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

Note: That emails sent to or from this email address are subject to retention and archiving by the United States Securities and Exchange Commission.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Shelly-Ann A. Springer-Charles
Senior Counsel
(305) 416-6224
springers@sec.gov

May 31, 2022

<u>VIA OVERNIGHT DELIVERY & EMAIL</u>
David J. Joffe, Esq.
Joffe Law, P.A.
The 110 Tower
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
davidjjoffe@aol.com

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Mr. Joffe:

As you know, your client AKC Management LLC ("AKC") was issued an April 11, 2022 subpoena for documents ("AKC subpoena") in connection with the subject matter and all documents responsive to that subpoena were originally due on April 25, 2022.  The staff did not receive a production of documents from AKC on the original April 25, 2022 due date. On April 27, 2022, pursuant to your request for an extension of time for AKC to produce all documents responsive to the AKC subpoena, the staff agreed to an extension of time through May 11, 2022 for AKC to produce all documents responsive to the AKC subpoena.  We did not receive a production of documents from AKC on May 11, 2022.  When we spoke on May 11, 2022, you indicated you planned to meet with your client on May 13, 2022 to discuss the production of documents and would get back to me that day with the date on which we could expect all responsive documents.  I did not hear from you on May 13, 2022.  I have left you three subsequent voicemails and sent you three emails on May 16, 17, and 20, 2022 regarding, among other things, AKC's outstanding production of documents but, absent a short text message at the time of one of my calls to you, I have not heard back from you.

We request compliance with the lawfully issued AKC subpoena.  Accordingly, please have your client AKC produce all documents responsive to the AKC subpoena by 5 p.m., June 2, 2022.

Please send the documents to:

ENF-CPU
U.S. Securities and Exchange Commission
14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letter to me at springers@sec.gov.

In addition, as you know, your client Paola Vargas is required by a May 10, 2022 subpoena to appear for testimony conducted by audio-visual teleconference means, using the WebEx Internet platform, on Wednesday, June 8, 2022 at 10:00 am. EDT.  No later than June 2, 2022, please provide me with the email address where I can send the WebEx link directly to Ms. Vargas and let me know if Ms. Vargas will require the services of a translator at the testimony.  In addition, ahead of Ms. Vargas' testimony, I will be sending you an email with various matters to address regarding the WebEx testimony.  We kindly ask that you respond to that email ahead of the testimony.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement

# ATTACHMENT  S

| | |
|---|---|
| **From:** | Springer, Shelly-Ann |
| **To:** | "Davidjjoffe@aol.com" |
| **Bcc:** | Perez, Carmen |
| **Subject:** | smail Empirex Capital LLC (FL-04274)-Paola Vargas Testimony |
| **Date:** | Wednesday, June 1, 2022 1:16:00 PM |

Mr. Joffe,

As discussed in my letter to you dated yesterday, I am emailing you regarding your client, Paola Vargas', Wednesday, June 8, 2022 10:00 a.m. EDT testimony.

Please note Ms. Vargas' testimony will be not be recorded via any means of video recording. There will be a court reporter that will transcribe the testimony and a transcript will be available a number of weeks after the Wednesday, June 8, 2022 10:00 a.m. EDT testimony.

You can certainly confer with your client privately during breaks with your own private phone calls or video sessions via your personal cell phones.

There are various matters to address prior to Ms. Vargas' Wednesday, June 8, 2022 10:00 a.m. EDT testimony.  I kindly ask that you respond prior to the sworn testimony taking place on Wednesday, June 8, 2022 at 10:00 am EDT.

- When we send the WebEx invite link, please understand that only the persons to whom we directly send the link to are authorized to join the session. You and your client, Paola Vargas, should not forward the invite or sign-in information to anyone else.  Please provide a list of the persons and corresponding email addresses and positions of the persons whom you wish to attend the WebEx testimony.

- You and your client, Paola Vargas, understand and agree that the oath or affirmation to tell the truth will be administered by audio-visual means rather than in person, but will have the same effect as if administered in person, and that she will tell the truth, the whole truth and nothing but the truth.

- We will provide you access to exhibits including portions of our investigative file by sharing through WebEx, contingent on your representation that you and your client, Paola Vargas, will not in any way record, save or capture any of this material.

- You and your client, Paola Vargas, understand and agree that you will not record any of the WebEx session whether through the WebEx system or with a separate device.

- You and your client, Paola Vargas, understand and agree that she will testify in a room alone, without the presence of any other individual outside of counsel.

- While it is acceptable to communicate with counsel during testimony, your client,

Paola Vargas, understands and agrees to request a break in order to speak with counsel prior to communicating with counsel.

- You understand and agree that if you send a chat message or email to your client, Paola Vargas, while on the record, you MUST state on the record that such a communication occurred.

- You and your client, Paola Vargas, understand and agree that she will not rely on any documents (including notes, websites, emails, calendars, etc.) outside of the exhibits during the testimony.

**Please respond to this email confirming that**: (1) you and your client, Paola Vargas, understand and agree that the oath or affirmation to tell the truth will be administered by audio-visual means rather than in person, but will have the same effect as if administered in person, and that she will tell the truth, the whole truth and nothing but the truth; (2) neither you nor your client, Paola Vargas, will in any way take any screen shots, pictures, or otherwise copy or capture, whether digitally or otherwise, any of the exhibits or other images that the staff makes available for your review via any WebEx sessions in connection with this matter. This does not preclude you as Paola Vargas' counsel from taking notes during testimony; (3) neither you nor your client, Paola Vargas, will in any way record any of the WebEx session whether through the WebEx system or with a separate device; (4) you and your client, Paola Vargas, understand and agree that she will testify in a room alone, without the presence of any other individual outside of counsel; (5) while it is acceptable to communicate with counsel during testimony, your client, Paola Vargas, agrees to request a break in order to speak with counsel prior to communicating with counsel; (6) you agree that if you send a chat message or email to your client, Paola Vargas, while on the record, you MUST state on the record that such a communication occurred; and (7) you and your client, Paola Vargas, understand and agree that she will not rely on any documents (including notes, websites, emails, calendars, etc.) outside of the exhibits during the testimony.

Please note, if Ms. Vargas intends to voluntarily produce the completed background questionnaire, which will help in expediting her June 8, 2022 testimony, we ask that she do so by June 6, 2022. A copy of the questionnaire was included with Ms. Vargas' May 10, 2022 subpoena for testimony. If you would like an electronic version of the questionnaire, please let me know and I will be happy to email one to you.

Please do not hesitate to contact me if you have any questions or concerns.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950

Miami, Florida 33131

Tel: (305) 416-6224

Fax: (305) 536-4146

https://www.sec.gov/regional-office/miami

# ATTACHMENT  T

| | |
|---|---|
| **From:** | Paula Mejia |
| **To:** | Springer, Shelly-Ann |
| **Cc:** | David Joffe, Esq. |
| **Subject:** | Empirex Capital LLC (FL-04274)-Paola Vargas Testimony |
| **Date:** | Wednesday, June 1, 2022 1:44:02 PM |
| **Attachments:** | image001.png |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon, Ms. Springer-Charles,

Mr. Joffe asked me to reach you about the referenced subpoena for testimony.

We have some documents to be filed in reference to said matter.

Could you please provide us with the civil case number in the District Court?

Thank you.

Respectfully,

Paula M.

Paralegal

Joffe Law, P.A.

The 110 Tower

110 SE 6th Street , Suite 1700

Fort Lauderdale, FL 33301

T: 954-723-0007

F: 954-723-0033



https://www.joffefederaldefense.com/

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail.  If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

# ATTACHMENT  U

| | |
|---|---|
| **From:** | Springer, Shelly-Ann |
| **To:** | "Paula Mejia" |
| **Cc:** | "David Joffe, Esq." |
| **Bcc:** | Perez, Carmen |
| **Subject:** | smail RE: Empirex Capital LLC (FL-04274)-Paola Vargas Testimony |
| **Date:** | Thursday, June 2, 2022 7:35:00 AM |
| **Attachments:** | image002.png |

Good Morning, Ms. Mejia,

Thank you for reaching out to me.  We do not have a federal district court action associated with the United States Securities and Exchange Commission's ("Commission") Empirex Capital LLC (FL-04274) investigation.  Ms. Vargas' May 10, 2022 subpoena for testimony was issued pursuant to a formal order of private investigation entered by the Commission in connection with our ongoing investigation.  Please feel free to contact me if you have any additional questions or would like to discuss this matter further.

Thank you.

Shelly-Ann A. Springer-Charles
Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Tel: (305) 416-6224
Fax: (305) 536-4146
https://www.sec.gov/regional-office/miami

---

**From:** Paula Mejia <paula@joffelaw.com>
**Sent:** Wednesday, June 1, 2022 1:44 PM
**To:** Springer, Shelly-Ann <SpringerS@sec.gov>
**Cc:** David Joffe, Esq. <davidjjoffe@aol.com>
**Subject:** Empirex Capital LLC (FL-04274)-Paola Vargas Testimony

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon, Ms. Springer-Charles,
Mr. Joffe asked me to reach you about the referenced subpoena for testimony.
We have some documents to be filed in reference to said matter.
Could you please provide us with the civil case number in the District Court?
Thank you.
Respectfully,

Paula M.

Paralegal

Joffe Law, P.A.

The 110 Tower

110 SE 6th Street , Suite 1700

Fort Lauderdale, FL 33301

T: 954-723-0007

F: 954-723-0033



https://www.joffefederaldefense.com/

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail.  If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

# ATTACHMENT  V

| From: | Paula Mejia |
|---|---|
| To: | Springer, Shelly-Ann |
| Cc: | "David Joffe, Esq." |
| Subject: | IN THE MATTER OF EMPIREX CAPITAL LLC- FL-04274 - DEFENDANT, PAOLA VARGAS' OBJECTIONS TO SUBPOENAS |
| Date: | Thursday, June 2, 2022 3:04:54 PM |
| Attachments: | image001.png |
| | vargas (AKC) objection to subpoena for production.pdf |
| | vargas objection to subpoena for testimony.pdf |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon, Ms. Springer-Charles,

Attached please find Ms. Vargas objections to the subpoena for testimony and objections to subpoena for production.

Respectfully,

Paula M.

Paralegal

Joffe Law, P.A.

The 110 Tower

110 SE 6th Street , Suite 1700

Fort Lauderdale, FL 33301

T: 954-723-0007

F: 954-723-0033



https://www.joffefederaldefense.com/

Confidentiality Notice:  This e-mail and/or any attachment to it contains, or may contain, privileged and confidential information intended only for the use of the individual(s) named in the e-mail.  If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, please permanently delete it from your computer system and promptly notify me.

UNITED STATES OF AMERICA
SECURITIES AND EXCHANGE COMMISSION
MIAMI, FLORIDA

IN THE MATTER OF EMPIREX CAPITAL LLC- FL-04274

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

vs.

EMPIREX CAPITAL LLC,
AKC MANAGEMENT,  LLC
PAOLA VARGAS

       Defendants.
_____/

**DEFENDANT, AKC MANAGEMENT, LLC's
OBJECTIONS TO SUBPOENA**

The Defendant, AKC MANAGEMENT, LLC (hereinafter "AKC"), by and through

undersigned counsel files its Objections to Subpoena issued by the SEC pursuant to Rule 8 of the

United States Securities & Exchange Commissions Rules Regulating Investigations, 17 C.F.R.

§203.8 and would state as follows:

<u>FACTUAL BACKGROUND</u>

1.     Plaintiff, SECURITIES AND EXCHANGE COMMISSION (hereinafter "SEC"')

filed an action against Empirex Capital, LLC.

2.     As a result of said action, SEC is seeking to obtain documents from AKC.

3.     The SEC issued a subpoena for documents requesting a voluminous amount of

documents from AKC that are irrelevant to the investigation pending.

4.     AKC files its objection to said subpoena and challenges the validity of the subpoena pursuant to 15 U.S.C. §78u(c). *See also United States v. Powell*, 379 U.S. 48 (1964).

<u>LEGAL ARGUMENT</u>

AKC challengers the subpoena issued by the SEC for production of documents and therefore, the SEC must show that (1) the inquiry is being conducted for  a legitimate purpose; (2) the subpoena is not too indefinite; (3) the information sought is reasonably relevant to the inquiry and (4) the subpoena was complied with required administrative procedures and was not issued in bad faith or for improper purposes.

AKC argues that the subpoena is being issued as a fishing expedition and that most if not all of the documents being sought is not relevant to the investigation pending and was issued in bad faith.  Again, AKC has limited to no involvement with the investigation being performed by the SEC and the subpoena was issued to threaten and/or harass AKC into producing its documents whether relevant to the investigation or not.

Because AKC has objected to the issuance of said subpoena, SEC must seek an enforcement action in a United States District Court. *See* 15 U.S.C. § 78u(c); *Sprecher v. Graber,* 716 F.2d 968, 975 (2d Cir.1983).

WHEREFORE, AKC prays that in the interest of justice, it's objection to subpoena for production issued by the SEC is granted any other relief that is just and proper.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2022, to Shelly Ann Springer-Charles, Senior Counsel, United States Securities and Exchange Commission, Division of Enforcement at springers@sec.gov.

Respectfully submitted,

JOFFE LAW, P.A.
Attorney for AKC
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: (954) 723-0007
Facsimile: (954) 723-0033
davidjjoffe@aol.com

By *David J. Joffe*
DAVID J. JOFFE, ESQUIRE
FLORIDA BAR NO. 0814164

UNITED STATES OF AMERICA
SECURITIES AND EXCHANGE COMMISSION
MIAMI, FLORIDA

IN THE MATTER OF EMPIREX CAPITAL LLC- FL-04274

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

vs.

EMPIREX CAPITAL LLC,
AKC MANAGEMENT, LLC
PAOLA VARGAS

        Defendants.
_____/

## DEFENDANT, PAOLA VARGAS'
## OBJECTIONS TO SUBPOENA

The Defendant, PAOLA VARGAS (hereinafter "VARGAS"), by and through undersigned counsel files her Objections to Subpoena issued by the SEC pursuant to Rule 8 of the United States Securities & Exchange Commission's Rules Regulating Investigations, 17 C.F.R. §203.8 and would state as follows:

### FACTUAL BACKGROUND

1.    Plaintiff, SECURITIES AND EXCHANGE COMMISSION (hereinafter "SEC"') filed an action against Empirex Capital, LLC.

2.    As a result of said action, SEC is seeking to obtain testimony from VARGAS.

3.    The SEC issued a subpoena for testimony from VARGAS. VARGAS files this objection due to the fact that she is also under criminal investigation by the government and any statements or testimony she provides could be used against her in the criminal investigation.

4.    VARGAS files her objection to said subpoena and challenges the validity of the subpoena pursuant to 15 U.S.C. §78u(c). *See also United States v. Powell*, 379 U.S. 48 (1964).

<u>LEGAL ARGUMENT</u>

VARGAS objects to the subpoena issued requiring her to testify before the SEC in connection with their investigation against Empirex Capital, LLC.  VARGAS objects to said subpoena due to the fact that there is also a pending criminal investigation pending as to her and her alleged involvement with Empirex Capital, LLC. VARGAS raises her fifth amendment right regarding said subpoena.  The fifth amendment stands as a sentinel for the protection of a defendant's constitutional right to remain silent. The right is not self-executing, however. Therefore, when a defendant voluntarily testifies, she waives her fifth amendment right and places herself in the same position as any other witness, subject to cross examination as to matters revealed in her testimony. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 148 (1958); *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978), cert. denied, 440 U.S. 920, 99 S.Ct. 1244 (1979). VARGAS therefore cannot testify as same would be deemed a waiver of her fifth amendment right.

Because VARGAS has objected to the issuance of said subpoena, SEC must seek an enforcement action in a United States District Court. *See* 15 U.S.C. § 78u(c); *Sprecher v. Graber,* 716 F.2d 968, 975 (2d Cir.1983).

WHEREFORE, VARGAS prays that in the interest of justice, her objection to subpoena for  testimony issued by the SEC is granted and  any other relief that is just and proper.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2022, to Shelly Ann Springer-Charles, Senior Counsel, United States Securities and Exchange Commission, Division of Enforcement at springers@sec.gov.

Respectfully submitted,

JOFFE LAW, P.A.
Attorney for VARGAS
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: (954) 723-0007
Facsimile: (954) 723-0033
davidjjoffe@aol.com

By _David J. Joffe_
DAVID J. JOFFE, ESQUIRE
FLORIDA BAR NO. 0814164

# ATTACHMENT  W



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Shelly-Ann A. Springer-Charles
Senior Counsel
(305) 416-6224
springers@sec.gov

July 13, 2022

<u>VIA OVERNIGHT DELIVERY & EMAIL</u>
Paola A. Vargas
c/o David J. Joffe, Esq.
Joffe Law, P.A.
The 110 Tower
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
davidjjoffe@aol.com

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Ms. Vargas:

It has come to our attention that as of June 30, 2022 AKC Management LLC ("AKC") was
voluntarily dissolved.  We believe AKC or Paola A. Vargas may possess documents and data,
referred to in this letter as "Evidence," relevant to an ongoing investigation being conducted
by the staff of the United States Securities and Exchange Commission. Accordingly, we
hereby provide notice that such Evidence should be reasonably preserved and retained until
further notice.  Failure to do so could give rise to civil and criminal liability.

The Commission considers potentially relevant documents to include those created on or after
January 1, 2018 requested in the April 11, 2022 subpoena issued to AKC in connection with
the subject investigation, a copy of which is enclosed with this letter and which we intend to
seek enforcement of in a United States District Court.

Such Evidence includes both "hard copy" and electronically-stored information in your
possession, custody or control, including: text files, data compilations, word processing
documents, spreadsheets, e-mail, voicemail, databases, calendars and scheduling information,
logs, file fragments and backup files, letters, instant messages, memoranda, notes, drawings,
designs, and correspondence or communications of any kind. Evidence that is stored
electronically may be maintained on shared network files, computer hard drives, servers,

DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDAs, smartphones, or other handheld devices, as well as in cloud or other remote data storage or processing services.

<u>You have a duty to reasonably preserve and retain such Evidence</u>.

<u>This duty includes an obligation to provide notice</u> to all employees or custodians who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as a provider of cloud computing or other remote data storage or processing services, or an internet service provider, cloud computing provider, or social media platforms such Facebook, LinkedIn, or Twitter, if such Evidence is within your control.

<u>You may need to act affirmatively to prevent the destruction of Evidence</u>. This duty may necessitate quarantining certain Evidence to avoid its destruction or alteration. You should consider whether you need to discontinue the routine destruction of Evidence, including discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders. You should avoid running or installing any drive cleaning, wiping, encrypting, or defragmenting software on electronic devices that may contain Evidence.

You should not alter or damage any forensically recoverable data. Any attempt to replicate electronic data without adhering to best practices for data replication could compromise the integrity or contents of such data.

You should consider preserving any forensically recoverable data by having mirror image copes of devices made or by forensically preserving data stored in the cloud or other remote computing service. Simply making "hard copies" of such Evidence or transforming it to other formats (such as TIFF or PDF documents) does not constitute preservation of forensic data. We are prepared to discuss with you proper protocols for replication before you attempt to copy Evidence. The Commission may be able to retain and supervise computer forensic resources to properly and non-invasively create back-up images of Evidence.

While we recognize that this may impose a burden on you, it is absolutely necessary that you fully comply with your obligations to reasonably retain and preserve Evidence. We appreciate your efforts in this regard.

Please contact me if you have any questions, or to meet-and-confer about the matters discussed above.

Sincerely,

SHELLY-ANN
SPRINGER-CHARLES

Digitally signed by SHELLY-ANN SPRINGER-CHARLES
Date: 2022.07.13 08:06:03 -04'00'

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement

Encl. April 11, 2022 Subpoena to AKC Management LLC



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

April 11, 2022

<u>VIA OVERNIGHT DELIVERY</u>
AKC Management LLC
c/o Paola Vargas, MGR, Registered Agent
221 SW 12th Street
# PH4
Miami, FL 33130

Re: <u>In the Matter of Empirex Capital LLC, FL-04274</u>

Dear Ms. Vargas:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to AKC Management LLC ("AKC"), in connection with the above-referenced investigation.

The enclosed subpoena requires AKC to produce documents to the SEC by April 25, 2022. Please deliver the materials by April 25, 2022 at 5:00 p.m. to:

ENF-CPU
U.S. Securities and Exchange Commission
14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to me at springers@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if AKC prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

When producing the records, please consecutively number and mark each document produced with a symbol that identifies it as being produced by AKC.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe AKC has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of AKC complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by AKC in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that AKC provides to the Commission and has other important information.

2

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 416-6224.

Sincerely,

SHELLY-ANN SPRINGER-CHARLES
Digitally signed by SHELLY-ANN SPRINGER-CHARLES
Date: 2022.04.11 10:51:47 -04'00'

Shelly-Ann A. Springer-Charles
Senior Counsel
Division of Enforcement
(305) 416-6224
springers@sec.gov

Enclosures:        Subpoena and Attachment
                   SEC Data Delivery Standards
                   SEC Form 1662
                   Business Records Certification



## SUBPOENA

# UNITED STATES OF AMERICA
# SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Empirex Capital LLC, FL-04274

**To:**   AKC Management LLC
c/o Paola Vargas, MGR, Registered Agent
221 SW 12th Street
# PH4
Miami, FL 33130

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than April 25, 2022 at 5:00 p.m.

---

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: SHELLY-ANN SPRINGER-CHARLES   Digitally signed by SHELLY-ANN SPRINGER-CHARLES Date: 2022.04.11 10:53:37 -04'00'          Date:   April 11, 2022

Shelly-Ann A. Springer-Charles, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## SUBPOENA ATTACHMENT FOR AKC MANAGEMENT LLC
### In the Matter of Empirex Capital LLC, FL-04274

April 11, 2022

### Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.      "AKC Management LLC" means the entity doing business under the name "AKC Management LLC" ("AKC"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.      "Empirex Capital LLC" means the entity doing business under the name "Empirex Capital LLC" ("Empirex"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.      "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

4.      A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

5.      "Acero" means (i) Roman David Acero Quintero and/or (ii) any present or former representative of Acero.

6.      "Gonzalez" means (i) Martha Gonzalez and/or (ii) any present or former representative of Gonzalez.

7.      "P. Vargas" means (i) Paola Andrea Vargas Gonzalez, and/or (ii) any present or former representative of P. Vargas.

8.      "R. Vargas" means (i) Rafael Alberto Vargas Gonzalez, and/or (ii) any present or former representative of R. Vargas.

9.      "Rojas" means (i) Catherine Rojas and/or (ii) any present or former representative of Rojas.

10.     "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in

the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

11.   "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

12.   "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

13.   An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

14.   The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

15.   The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

16.   To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
       a.      the word "or" means "and/or";
       b.      the word "and" means "and/or";
       c.      the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

d.      the masculine gender includes the female gender and the female gender includes the masculine gender; and

e.      the singular includes the plural and the plural includes the singular.

17.     "Relevant Period" means the time period beginning January 1, 2018, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

18.     "Relevant Entities and Individuals" means each of the following: Empirex, Acero, Gonzalez, P. Vargas, R. Vargas, Rojas, and any entity or individual Concerning the recruiting of Empirex investors or the sale of an Empirex investment to investors.

## Instructions

1.      Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you must secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period from January 1, 2018, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

        a.      its author(s);
        b.      its date;
        c.      its subject matter;
        d.      the name of the Person who has the item now, or the last Person known to have it;
        e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
        f.      the basis upon which you are not producing the responsive Document;
        g.      the specific request in the subpoena to which the Document relates;
        h.      the attorney(s) and the client(s) involved; and
        i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

<u>**Documents to be Produced**</u>

1.   Documents sufficient to disclose the corporate structure of AKC, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

2.   Documents sufficient to identify all officers, directors, principals, owners, shareholders, employees, and all others acting on behalf of AKC, and Documents sufficient to disclose, for each individual identified in response to this Item:
     a.   title;
     b.   dates of affiliation with AKC;
     c.   current or last known home address and telephone number;
     d.   current or last known employment address and telephone number; and,
     e.   salary or other compensation for each year from January 1, 2018 to the present;

3.   Documents sufficient to disclose all domestic and foreign bank, brokerage, or other financial accounts held by or on behalf of AKC from January 1, 2018 to the present, and Documents sufficient to disclose, for each account identified in response to this Item:
     a.   the name, address, and telephone number of the financial institution where the account is held, maintained, directed or controlled;
     b.   the account number;
     c.   the name, address, and telephone number of the branch office, if any, where the account is held, maintained, or directed;
     d.   the account name; and,
     e.   the date the account was opened;

4.   Documents sufficient to disclose all other assets held by or on behalf of AKC;

5.   All draft and final financial reports Concerning AKC including, but not limited to, audited and unaudited financial statements, including balance sheets and statements of income and retained earnings and cash flows, as well as all ledgers, journals, and workpapers used to prepare and support AKC's financial statements, balance sheets, copies of filed federal and state corporate income tax returns and 1099/1098/1096 tax returns, w-2s and payroll tax returns, trial balances, cash receipt journals, bank statements, copies of canceled checks, deposit records with copies of deposit items, cash disbursement journals, balance sheets, statements of income and retained earnings, and any other report of receipts, disbursements, net profits and losses, and cash flow;

6.   All Documents Concerning Agreements, contracts, loans, notes, or understandings between AKC and any of the Relevant Entities and Individuals;

7.   All Documents Concerning Agreements, contracts, loans, notes, or understandings among or between the Relevant Entities and Individuals Concerning Empirex;

8.   All Documents or Communications Concerning Empirex;

9.    Documents sufficient to identify all AKC investors, Concerning or referred by any of the Relevant Entities and Individuals, and all Empirex investors by name, address, and telephone number;

10.   For each investor identified in response to Item 9 above, Documents sufficient to disclose:
   a.   the amount invested;
   b.   the date(s) of investments; and,
   c.   whether, when, and how much of each investors' principal has been returned to them;

11.   For each investor identified in response to Item 9 above, all Documents Concerning agreements or contracts between AKC or Empirex and the investor and all Documents Concerning terms of investments;

12.   For each investor identified in response to Item 9 above, all periodic or other account statements;

13.   For each investor identified in response to Item 9 above, all Documents Concerning the investment of (or other use of) their funds by AKC or Empirex and the current location of investor funds;

14.   All Documents and Communications Concerning all investment, promotional, sales, marketing, or advertising materials offered, sold, advertised, distributed, or otherwise disseminated, directly or indirectly, by AKC or Empirex or any of the Relevant Entities and Individuals to AKC investors, Concerning or referred by any of the Relevant Entities and Individuals, or Empirex investors, including, but not limited to, offering memoranda and attachments, business and projection plans, subscription agreements, and operating agreements;

15.   Documents sufficient to identify all individuals or entities who any of the Relevant Entities and Individuals solicited as potential investors but did not ultimately invest in AKC or Empirex;

16.   All Documents Concerning the payment of fees to any individual or entity in connection with the recruiting of AKC investors by any of the Relevant Entities and Individuals or Empirex investors or the sale of an AKC investment by any of the Relevant Entities and Individuals to investors or the sale of an Empirex investment to investors;

17.   All Documents Concerning Communications between AKC or any of the Relevant Entities and Individuals and investors or potential investors in AKC, Concerning or referred by any of the Relevant Entities and Individuals, or investors in Empirex;

18.   All Documents and Communications Concerning all Empirex investors;

19. All Documents and Communications Concerning funds received by AKC from the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such receipts;

20. All Documents and Communications Concerning funds disbursed by AKC to the Relevant Entities and Individuals, including, but not limited to, front and back of all canceled checks, check stubs, wire transfer instructions, invoices, receipts, statements, ledgers, tax forms, and any other documents or records reflection such disbursements;

21. All Documents Concerning all Communications between AKC and the Relevant Entities and Individuals during the Relevant Period Concerning:
 a. AKC;
 b. Empirex;
 c. Acero;
 d. Gonzalez;
 e. Rojas;
 f. P. Vargas;
 g. R. Vargas;
 h. all funds received by the Relevant Entities and Individuals directly or indirectly from AKC;
 i. all funds disbursed by the Relevant Entities and Individuals directly or indirectly to AKC;
 j. all funds received or disbursed by AKC; and,
 k. all Agreements, contracts, loans, notes, or understandings between AKC and the Relevant Entities and Individuals; and,

22. To the extent not provided in response to other Requests, all Documents Concerning the following:
 a. All AKC accounts held at Bank of America, N.A., JPMorgan Chase Bank, N.A., and Wells Fargo Bank, N.A. from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;
 b. All other AKC accounts held at all other domestic or foreign banks, brokerages, or other financial institutions from January 1, 2018 through the present, including, but not limited to, account opening Documents and periodic or other statements;
 c. The Relevant Entities and Individuals;
 d. All AKC investors, Concerning or referred by any of the Relevant Entities and Individuals;
 e. All Empirex Investors; and,
 f. All funds or assets, including, but not limited to, the purpose of the funds or assets, deposited into any AKC bank, brokerage, or cryptocurrency account by any individual or entity.

## DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
## OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by AKC Management LLC as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2. I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

    (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

    (b) kept in the course of regularly conducted business activity; and

    (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].


_____

[*Name*]



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions .................................................................................................................................. 1

Delivery Formats ...................................................................................................................................... 2

   I.  Imaged Productions.......................................................................................................................... 3

      1.  Images .................................................................................................................................. 3

      2.  Image Cross-Reference File ................................................................................................ 3

      3.  Data File .............................................................................................................................. 3

      4.  Text..................................................................................................................................... 3

      5.  Linked Native Files ............................................................................................................ 3

   II.  Native File Productions without Load Files .................................................................................. 4

   III.  Adobe PDF File Productions ...................................................................................................... 4

   IV.  Audio Files.................................................................................................................................. 4

   V.  Video Files .................................................................................................................................. 4

   VI.  Electronic Trade and Bank Records ........................................................................................... 4

   VII.  Electronic Phone Records ......................................................................................................... 4

   VIII.  Audit Workpapers .................................................................................................................. 5

   IX.  Mobile Device Data .................................................................................................................. 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is **not** considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

I. **Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

1. **Images**
   a. Black and white images must be 300 DPI Group IV single-page TIFF files
   b. Color images must be produced in JPEG format
   c. File names cannot contain embedded spaces or special characters (including the comma)
   d. Folder names cannot contain embedded spaces or special characters (including the comma)
   e. All image files must have a unique file name, i.e. Bates number
   f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g. The number of image files per folder should not exceed 2,000 files
   h. Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i. AUTOCAD/photograph files should be produced as a single page JPEG file

2. **Image Cross-Reference File**
   The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3. **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a. The first line of the .DAT file must be a header row identifying the field names
   b. The .DAT file must use the following *Concordance®* default delimiters:
      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)
   c. If the .DAT file is produced in Unicode format it must contain the byte order marker
   d. Date fields should be provided in the format: mm/dd/yyyy

   f. The time zone must be included in all time fields
   g. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
   i. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j. BEGATTACH and ENDATTACH fields must be two separate fields
   k. A complete list of metadata fields is available in **Addendum A** to this document

4. **Text**
   Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.

a.  Native file documents must be named per the FIRSTBATES number
b.  The full path of the native file must be provided in the .DAT file for the LINK field
c.  The number of native files per folder should not exceed 2,000 files

Rev 8/2021

## II.  Native File Production without Load Files

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

## III.  Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV.  Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

## V.  Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI.  Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII.  Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

U.S. Securities and Exchange Commission
Data Delivery Standards

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

7

| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. Email: Time zone Native: (empty) |
|---|---|---|
| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last modified including the time zone **This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last accessed including the time zone **This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |

8

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| --- | --- | --- |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating– Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5. *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.